Selden, J.
 

 The first question presented by this case is, whether it was sufficiently established upon the trial, that Sir William Johnson, prior to his death in 1774, was the proprie-. tor of a tract called the Royal Grant, situated in the now county of Herkimer, and embracing the premises in controversy. His title was claimed to have been derived from a grant directly from the British Crown.
 

 For the purposes of this question I shall assume, that the plaintiffs had made all the search for the original grant of letters patent which the law requires; that they were not bound
 
 *210
 
 to resort to the government records in London, • and that the proof on that subjeqt was sufficient, to entitle them to give secondary evidence of such grant. If then the evidence given on that subject, taken in connection with facts and circumstances of which the court was authorized to take judicial notice,. was sufficient to show
 
 prima facie
 
 that the grant or patent in question had ever existed, the nonsuit was wrong, and the judgment should be reversed.
 

 The only evidence actually introduced upon the trial, having any bearing upon the question, consisted in the recitals con tained in the will of Sir William Johnson, and the two acts of the legislature passed respectively in February, 1797, and March, 1798. FTo other evidence was given or offered, having any tendency to establish the existence of the patent; unless some slight weight be attached to the fact stated by Mr. Ford, that there is a tract in Herkimer county, known as the Eoyal Grant. To establish that such a grant was made, therefore, the counsel for the plaintiff relies: First, upon the recitals in the will. Secondly, upon the two statutes read in evidence: and Thirdly, upon the public history of the period in which Sir William Johnson lived, and especially upon a manuscript 'memorial addressed to the Bring, and dated in 1776, published in the Colonial History of this State (vol. 7, p. 839), in which Sir William prays for a grant of the tract in question, of which history, memorial, &c., the counsel claims the court should take judicial notice. As the force of each of these items of evidence depends upon considerations and principles peculiar to itself, they must be separately examined.
 

 The will read upon the trial recites or rather assumes that the testator owned the tract called the Eoyal Grant, or Brings-land. Is this ■ any evidence of such ownership, in favor of those claiming under the will ?
 

 The general rule in regard to recitals in deeds or other instruments is, that they are evidence against the parties executing such deeds or instruments, and those who claim under them, but not in their favor. The admissibility of the recital .- depends upon the same principles as the admissibility of a
 
 *211
 
 declaration of the party executing the instrument. Such recitals, therefore, are in general no evidence against third persons, who are strangers to the deed or instrument in which they occur.
 

 ■ It is true, that an exception has sometimes been admitted, in cases where the inquiry relates to transactions of an ancient date, and where, in consequence of the loss or destruction, from the lapse of time or other causes, of better evidence, it became necessary to resort to that of a secondary character. A reference, however, to a few of the cases of this class will, I think, show that they differ from this in an essential particular.
 

 In-the case of
 
 Doe
 
 v.
 
 Phelps
 
 (9 John., 169), a deed executed in 1767, by one of several patentees of a tract of land in Otsego county, in which one of the grantors assumed to execute, not only for himself but as attorney for eight other persons, was treated as affording of itself sufficient evidence of the execution of the necessary power of attorney. But it was further proved in that case, that the lots in this patent generally were held under titles derived through this deed; and a witness testified, that the defendant did not pretend to claim any title to the premises. Reliance was placed upon these facts, and the court said: “After a lapse of forty-four years, and
 
 when the possessions have gone along with the deed,
 
 to Van Dam, and where no pretence of claim in opposition to that deed has been heard of, the execution of the power of attorney recited in the deed of 1767 may reasonably be presumed.”
 

 So in
 
 Jackson
 
 v.
 
 Lamb
 
 (7 Cow., 431), where the mutilated fragments of an ancient lease, dated in 1774, which recited that it was given in order to support a release, were allowed to go to the jury as evidence of the execution of the release, but only in connection with proof of possession in accordance with the release claimed. • Upon the motion for a new trial Savage, Ch. J., said': ■ “ The facts are certainly sufficient to warrant the* presumption of a release. The léase for a year, preserved for a long time among Campbell’s papers,
 
 the possession of forty
 
 years, upon part of lot Ho. 1, and the possession of other lots in the patent belonging to the' same right, are abundantly sufficient to authorize the presumption,”
 

 
 *212
 
 But the case which goes as far perhaps as any other to support- the position taken here, is that of
 
 Jackson
 
 v.
 
 Lunn
 
 (3 John. Ca., 109). The action was ejectment for a lot of land in the county of Montgomery. A patent had been granted to several persons .in August, 1735, for fourteen thousand acres of land, including the lot in dispute. The lessees of the plaintiff were permitted to prove that their ancestor, Sir Peter Warren, who was not one of the original patentees, claimed in 1736 to own the whole tract, and executed a large number of leases in that year, in which he asserted such ownership. ' But it was further proved that Sir Peter continued to exercise acts of ownership of the property until the time of his death, and that his heirs did the same after his death, and that his title and that of his heirs was acknowledged by the tenants upon fhe patent, and remained undisputed until after the year 1783. Under these circumstances, the court held that a conveyance from the original patentees to Sir Peter Warren might be presumed.
 

 That case bears a close resemblance to the present, in this, ' viz.: The heirs there were suffered to avail themselves, as evidence, of an assertion of title made in a document signed by their ancestor. But the difference in other respects is wide.' There the assertion of the ancestor was sustained by possession under an undisputed claim of title for nearly fifty years; and here there is no proof of possession for a single day.
 

 These cases illustrate the rule on this subject, which is, that assertions of title, or claims of ownership made in deeds or wills, may in some rare cases be evidence in favor of- persons claiming under the grantor or testator by-whom such deed or will was executed, but only in connection with other proof of a long continued and undisputed possession, in accordance with the right or title claimed. Here there was no such proof, and I see nothing to take this case out of the general rule, that recitals pr assertions contained in any deed or other written instrument, are never evidence in favor of the party who executes the deed, &c:, or any person claiming under him, nor against strangers.
 

 
 *213
 
 The next question is, whether the two acts of the legislature read in evidence, afforded any proof of the existence of the grant.
 

 That the preambles to public statutes are admissible in suits between private individuals, as evidence of the facts recited in them, may perhaps be conceded
 
 (Rex
 
 v. Sutton, 4 M. & S., 532); although in such cases the evidence, I apprehend, is
 
 prima faxie
 
 only, and not conclusive. But private statutes have never been held admissible against parties in no way connected with such statutes. Evidence of this description was rejected by the Court of King’s Bench in the case of
 
 Brett
 
 v.
 
 Beales
 
 (1 Mood. & Mal., 416), although the act in that case expressly provided, that it “should be deemed and taken to be a
 
 public
 
 act,” and should be “judicially taken notice of as such by all judges, justices and others, without being specially pleaded.”
 

 The objections to such evidence are well stated in the case •of
 
 Elmendorf v. Carmichael
 
 (3 Litt. R., 472). The court there say: “The facts recited in the preamble of a private statute, may be evidence between the Commonwealth and the applicant or party for whose benefit the act passed. But as between the applicant and another individual whose rights are affected, the facts recited ought not to be evidence. * * * * * * Once adopt the principle that such facts are coiiclusive, or even
 
 prima facie
 
 evidence against private rights, and many individual controversies may be prejudiced and drawn from the functions of the judiciary, into the vortex of legislative usurpation. * * x x x x x a preamble is evidence that the facts I were
 
 so represented to the
 
 legislature, and not that they really existed.”
 

 All who are familiar with the general course of legislation, will readily concur in the conclusion arrived at in this case. It is true, that in the case before us, we have much greater reason to place confidence in the accuracy of the facts recited and assumed in the acts read in evidence, than in the case of most private acts; for the reason that here was a body of public officers called the Commissioners of Forfeitures, whose special duty it was to inquire into and ascertain the truth of the rep
 
 *214
 
 resentation upon which the legislature acted. Still, the principle is not changed. The acts are
 
 res inter alios
 
 acta, and cannot affect those who are in no manner parties to them. Under certain circumstances these acts might have been very satisfactory evidence in this case. They would undoubtedly operate as admissions by the Peoplé of the State that the tract known as the Royal Grant did belong to the devisees of Sir William Johnson. If, therefore, it appeared that the defendant claimed by virtue of a title derived from the State since the Revolution, the evidence would have been admissible against him. But this fact cannot be presumed. Grants may have been made by the King, or by the Colonial Governors, to other persons as ' Well as to Sir William, under some of whom the defendant may claim. There is neither fact nor circumstance in the case from which anything can be inferred on this subject; and the burden-rested upon the plaintiffs to show the proof admissible. The acts in question therefore, if objected to, could not have been read in evidence; and although read without objection, they prove nothing as against the defendant.
 

 The plaintiffs’ title, therefore, derives n'a support from the proof actually given upon the trial; and it only remains upon this branch of the case, to see whether the historical evidence relied upon is sufficient to establish it.
 

 There are several very conclusive objections to this evidence. In the .first place, it was not introduced or offered upon the trial. There are no doubt cases in which courts, upon questions addressed to them, may take judicial notice of matters oft general history and of public and universal notoriety, which '■ admit of no dispute. But upon the trial of issues of fact by a, jury, if reliance is placed f^ion any matters of this sort, some evidence of -them must be adduced, i- In all the early cases on the subject, the histories relied upon were produced at the trial. Thus in the case of
 
 St. Catharine's Hospital
 
 (1 Vent., 149), where the question was, as to the right of a Queen Dowager .to appoint a master of the hospital; it having been decided in 4 Edw., 3, that she had no such right, Lord Hale allowed it to be “
 
 shown
 
 out of Speed’s Chronicles,
 
 pvduced in
 
 court., that
 
 *215
 
 Queen Isabel was under great calamity and oppression, and what was then determined against her, was not so much from the right of the thing as the iniquity of the times.” So in the case of
 
 Lord Brounker
 
 v.
 
 Sir R. Atkins
 
 (Skin., 14), “Speed’s Chronicles, was
 
 given in
 
 evidence, to prove the death of Isabel, Queen Dowager of Edward 2.”
 

 This point was directly considered by the Court of Appeals of Virginia, in the case of
 
 Gregory
 
 v.
 
 Baugh
 
 (4 Rand., 611), which was an action brought by Baugh to recover his freedom. The case turned upon the question, whethenthe plaintiff was of Indian descent; and the judge at the trial had charged the jury, that “it was a question to be decided upon probabilities and circumstances, among which it was lawful for the jury to consider
 
 facts connected with the history of the
 
 country¡ as if formally proved to them.”
 

 Judge Cabe, in delivering the opinion of the court, after quoting this part of the charge, says: “This I presume cannot mean, that the jury are to consider such facts as if formally proved,
 
 when proved;
 
 but that
 
 without proof
 
 they are to consider them as if formally proved; that is, that each juror might take any facts as formally proved, which he may have heard of in a way to satisfy his mind, and might consider as connected with the history of the country. If this be the meaning, it is contrary to law; for it is laid down in all the books, that there must be some proof nddncad-n£JiistQn<^^Rt82? There is no doubt, I think, that the rule is as here stated-. That it should be so, is obvious; not only in order that the jury may all be equally possessed of the evidence from Which their conclusions are to be drawn, but that the facts upon which their conduct is based may be known. _
 

 Another objection to this evidence is, that Benton’s History of Herkimer County, from which most of the facts relied upon are drawn, would not have been admissible in evidence if offered upon the trial. First, it is doubtful whether any historical work can be read in evidence, while the author is living, and can be called as a witness to state the sources of his knowledge. (Mo
 
 rris
 
 v.
 
 Lessee of Harmer's
 
 heirs, 7 Peters, 554.)
 
 *216
 
 Another objection is, that it was not a general, but a mere local history. In the case of
 
 (Evans
 
 v. Getting (6 Carr. & Payne, 586), where the question was-as to the boundaries between two counties, the plaintiff proposed to read from Hichol’s History of Brecknockshire to show the boundaries of that county, but Baron Aldebson, before whom the trial was had, said: “ This is a history of Brecknockshire. The writer of this history probably had the same interest in enlarging the boundaries of the county, as any other inhabitant of it. It is not like a general history of Wales. I shall not receive it.” It may with equal propriety be said here, the writer of Benton’s History may have had an interest in establishing the title to the Royal Grant. This kind^oiLevidence is only receiyedjfrom necessity, and should be strictly guarded.
 

 But a more conclusive objection to any mere -historical evidence in this case is, that such evidence is only admissible to prove facts of a general and public nature; and not those which concern individuals or mere local communities. In the caáe of
 
 Staines
 
 v.
 
 Burgesses of Droitwitch
 
 (1 Salk., 281), Camden’s Brittania was offered in evidence upon a question as to the custom of Droitwitch; but the court refused to receive it, holding that “ a general history might be given in evidence to prove a matter relating
 
 to the kingdom in general,
 
 because the nature of the thing requires it, but not to prove
 
 & particular right or
 
 custom.” So in the case of
 
 Morris
 
 v.
 
 Lessee of Harmer's heirs, supra,
 
 the court says: “ Historical facts of
 
 genei-al and public
 
 notoriety, may indeed be proved by reputation; and reputation may be established by historical works of known character and accuracy.” So in a late case in this State, viz. :•
 
 Bogardus
 
 v.
 
 Trinity Church
 
 (4 Sand. Ch. R., 633, 724), the Vice-Chancellor, speaking of evidence derived from public records, statutes, legislative journals, historical works, &c., says that it is “restricted as to historical evidence to facts of a public and general nature.” There is indeed no doubt that it is strictly confined to facts of this sort. History is only admissible to prove history, that is, such facts as being matters of interest to a whole people, are usually incorporated in a general history of the state or nation.
 
 *217
 
 The historical evidence relied 'upon, therefore, even had it been . offered upon the trial, could not have been received, with the exception perhaps of the memorial of' Sir William Johnson to the King, published in volume 7 of the Colonial History of the State. I am inclined to think, that had a proper foundation been laid for the introduction of this document, by showing, that the tract known as the Royal Grant had been generally 1 possessed and occupied from the time of Sir William’s death, under a claim of title derived from him, that both this memorial and the will of Sir William would not only have been admissible, but sufficient perhaps to authorize the jury, to presume that a patent had been issued pursuant to the prayer of^ the memorial. But such a document must clearly be intro-' duced upon the trial; and could no more be taken notice of without proof, than the patent itself, if one was issued pursuant^ to its request. The conclusion from these views is, that there was no evidence actually introduced upon the trial, nor any which the jury had a right to consider, which has any tendency to establish the fact that the grant in question had ever'
 
 /
 
 been made.
 

 The only remaining question is, whether the court erred in rejecting the question put to the witness Ford, in respect to the common report among the settlers upon the Royal Grant, as to the disposition which had been made of the letters patent.
 

 The answer to this question, if admitted, would have been . wholly immaterial, unless accompanied by proof that the patent had once existed; and no such proof was given. But as it may be said that when this question was asked and rejected the proof was not closed, and that if the answer had been received, the plaintiff might afterwards have given evidence of the execution of the letters patent,-1 will briefly consider the point. •
 

 That hearsay or reputation is admissible as evidence, upon questions of pedigree or family relationship, and also upon questions respecting the boundaries of lands, is a familiar doctrine. But there are, no doubt, other cases in which the same kind of evidence may be received, for the purpose of establishing a mere private right, when the fact to be proved
 
 *218
 
 is one of a
 
 quasi
 
 public nature, that is, one which interests a multitude of people, or an entire community; and it seems to me that this case is one that might fairly be considered as falling within the latter class. The Royal Grant, as it is called, is . an extensive tract, embracing an entire township and parts of several others; and everything relating to the original docu- ’ ment upon which the title depended, would necessarily affect the interests of every occupant of the tract. Again, the fact sought to be proved, viz.: the burying in the ground, by the descendants of Sir William Johnson, of the muniments of his title, is one which would scarcely be susceptible of any other Jdnd of proof. Of too ancient a date to be proved by eye-witnesses, and not of a character to be made a matter of public record, unless it could be proved by tradition there would seem to be no mode in which it could be established. It is a universal rule, founded in necessity, that the best evidence of which the nature of the casé admits is always receivable. Hence, had a proper foundation been laid for the proof in this case, I should have thought it admissible. But it is always a condition to the introduction of evidence of reputation in such cases, that it should appear to come from persons who may justly be supposed tó have had some knowledge on the subject. The doctrine is very clearly stated, and the reasons for it given, by Professor Greenleaf in his work upon Evidence (§ 128). .After stating that upon questions of a
 
 strictly
 
 public nature “all persons must be presumed.conversant” with the facts; and-hence that in such matters,'- “in which all are concerned, reputation'.from any one appears to be receivable;” he proceeds to say: “ On the contrary, when the fact in controversy is one in which all the members of the community have not an interest, but those only who live in a particular district, or adventure in a particular enterprise, or the like, hearsay from persons wholly unconnected with the place or business would not only 'be of no value, but altogether inadmissible.” Again, he says: (§137) “ The probable want of
 
 competent
 
 knowledge, is the reason generally assigned for rejecting evidence of reputation, or common fame, in matters of mere private right.”
 

 
 *219
 
 In most cases involving questions of fact affecting particular localities, as towns, counties, manors or the like, it would be sufficient to show that the reputation or tradition offered in evidence was derived from persons inhabiting the particular town or district. But here that is not enough; because, unless the residents upon the Royal Grant claim to hold their lands under and by virtue of the patent in question, they would have no special interest in acquainting themselves with its history; and consequently no presumption would exist, that they possessed that peculiar knowledge on the subject, which is always required in order to let in proof of this kind. For the reason, therefore, that it was not shown that the settlers upon the tract known as the Royal Grant generally held their possessions and claimed their titles under Sir William Johnson or his devisees, the question put to Mr. Ford was, in my opinion, properly rejected.
 

 The judgment of the Supreme Court should therefore be affirmed.
 

 All the judges concurring,
 

 Judgment affirmed.