## MACKINNON *et al. vs.* BARNES.

Where a person, appointed by the Governor of New York commissioner for the city of London, pursuant to the act of April 17, 1858, (*Laws of* 1858, *ch.* 308,) certifies that a document purporting to be a copy of a patent, is a correct transcript of the original enrolment remaining of record in the public record office at London, and of the whole of such original enrolment, and that the said patent is in existence and remains enrolled of record in said office, and that said office is the proper place wherein the public records of Great Britain are preserved, the existence of the enrolled patent is fully proved; and it is proved that it was found in the appropriate place for such a document; that the copy presented is a correct transcript of such enrolled patent; and that the original patent was executed in due form of law to pass the title to the land therein described, to the grantee.

The right of the king of Great Britain to grant lands belonging to the crown could be exercised without an act of parliament. Although parliament might require lands to be granted, yet the grant was made by the crown. In such a case it was delivered, in the attesting clause, to the donee with the consent of the parliament.

Where there was no date to a patent of lands in this state, nor were any means furnished by which it could be ascertained, except that the patent purported to have been made in June of some year during the reign of George the 3d; *Held* that as the year was not mentioned, no adverse title having its origin in that reign being shown, it might be assumed to have been during some year prior to the revolution, and at a time when the king of Great Britain might lawfully make the grant. And that as the law of England required a patent to be enrolled, it must have been enrolled when, and in the country where, it issued.

*Held, also,* that if there was any law requiring a patent from the crown to be deposited in the colony where the land conveyed by it lay, it was incumbent on a party claiming in opposition to the patent to show it.

The commissioner appointed under the act of April 5, 1858, being authorized to certify to the existence of any patent, record or other document, his certificate that a record exists implies that the place where it is found is the place where by law it should be found.

The authority of the commissioner to certify is not confined to the original patent, record or other document. A copy, certified by him, is admissible in evidence.

A will, executed in 1774, was claimed to have been proved, in 1808, in the Supreme Court, under the act of 1801, (*Laws of* 1801, *ch.* 9.) A paper, purporting to be a copy thereof, was preceded by a recital that on a day named the original had been brought into court and proved, and ordered to be recorded. At the foot of the copy was a certificate in these words: "Examined and compared with the original by me, F. B., clerk." The title of no court was given, nor was there anything in the paper showing in what court the proceedings were had, except the name of the clerk. *Held* that

Mackinnon *v.* Barnes.

the court would take judicial notice of its own officers, who they were, and the genuineness of their signatures; and that F. B. being clerk of the Supreme Court, in 1801, the court knew that fact judicially, and it must be assumed.

*Held, also,* that the will was proved, and the record made, in the Supreme Court; and that court had, by law, jurisdiction to admit the will to probate, and it was sufficiently proved.

*Held, further,* that the book in which the record of the will was made by the clerk, passed, by section 69 of the Judiciary Act of 1847, to the clerk of the Court of Appeals, who was authorized to furnish certified copies of all records transferred to him pursuant to that act; and this certificate being in due form, a copy of the will from the record was properly received in evidence.

Where a grant of lands was made by the crown of Great Britain to J. and 39 others, prior to the revolution; *Held,* in an action of ejectment, by a party claiming title under J., that in the absence of any proof of a grant or release to J., from his co-grantees, of their interests, or of possession and acts of ownership by J. over the whole of the land, or, recognition of his title to the whole, such a grant or release could not be presumed, and the plaintiff was not entitled to recover.

Acceptance of a grant is established by proof that the grantee has assumed to dispose of the land by will.

THIS is an action of ejectment to recover a farm of about one hundred and eighteen acres of land situated in the town of Salisbury, Herkimer county, described as lot 29, in George Johnson's three thousand acre tract, in the fourth allotment of the Royal Grant, which the plaintiffs claim as the heirs at law of Daniel Mackinnon, who is alleged to have died, seised thereof, January 30, 1830. In his answer, the defendant denies the allegations in the complaint, and sets up adverse possession.

The cause was tried before Justice Morgan and a jury, at the Herkimer circuit, in December, 1864. The plaintiffs attempted to show paper title, 1, by a patent granted by King George III, to Sir William Johnson and thirty-nine others; 2, by the will of Sir William Johnson, executed Jan. 27, 1774, in which the land in question is claimed to have been devised to George Johnson; 3, by the deed of George Johnson, dated Sept 11, 1792, to James McEvers and other mesne con-

veyances to Daniel Mackinnon. Neither the plaintiffs, nor any of those under whom they claim, were shown ever to have been in possession of the land.

To the evidence of the plaintiffs there were various objections, which were overruled by the court, and exceptions were taken by the defendant.

At the close of the plaintiffs' case the defendant moved for a nonsuit on these grounds:

1. The pretended patent is no patent, but is void as illegal and irregular.

2. There is nothing showing that the office from which this paper comes is the proper office where patents are recorded.

3. It does not appear that the person who certifies it is the proper custodian, or has power to certify.

4. It does not purport to be signed by the king.

5. It is not sealed, either with the privy or great seal.

6. The will of Sir Wm. Johnson refers to a patent granted to him under the great seal, and this patent is to him and thirty-nine others, and is not and does not purport to be under the great seal.

7. This patent does not appear by any evidence to cover or include the premises. It has never been located.

8. The will is not sufficiently proved.

9. George's tract was never located under the will, and moreover, the prior devises exhaust all the land in the grant, there being more than 80,000 acres devised in the grant prior to George's.

10. The George Johnson, under whom the plaintiffs claim by deed, is not necessarily George Johnson Brant, the devisee.

11. George was the illegitimate son of an Indian woman; was therefore an Indian; is called an Indian in the deeds and, as such, was incompetent to take or convey land.

12. George took only a life estate absolutely; an

estate in fee only upon the contingency of his dying leaving issue. The proof of issue, or of his being in life, devolves upon the plaintiffs.

13. The title shown by the plaintiffs, if all objections are untenable, is still only one moiety of one-fortieth part undivided, and the plaintiffs must show ouster before they can recover even that one-eightieth.

14. The evidence is insufficient to support the action.

The court declined to nonsuit the plaintiffs, and the defendant's counsel excepted to the decision.

The court directed the jury to find a verdict for the plaintiffs, and directed all the exceptions to be heard in the first instance at the General Term, on a motion for a new trial to be made there.

*Thos. G. Shearman*, for the plaintiff.

*A. Loomis* and *R. Earl*, for the defendant.

*By the Court*, MULLIN, J. The king of Great Britain was, by the common law, the source of title of all lands within his domain, as well those acquired in foreign parts by treaty, conquest or discovery, as those within Great Britain itself. Hence all grants are, either in contemplation of law or in fact, from him. The usual form of conveyance by the king was by patent under the great seal. The steps necessary to be taken to perfect a patent were regulated by a statute of 27 Henry 8th, chap. 11. That act provided that every gift, grant, &c., made by the king, signed by his sign manual before it pass any of his seals, shall be brought to his principal secretaries or one of the clerks of the signet, to be passed at the office of the signet. The secretary or clerk of the signet to whom such writing should be delivered signed with the king's hand, shall, by warrant of the same bill, in eight days after its receipt, make, in the king's name, letters of warrant under his hand and

sealed with the king's signet, to the lord keeper of the privy seal, for further process to be had thereon.   The clerk of the privy seal was required, in eight days, to make other letters of like warrant to the lord chancellor, or certain other officers named, by writing and sealing with their seals, letters patent or close, or other process requisite to such grant.   Upon the receipt of such warrant under the privy seal, the lord chancellor, or other officer to whom the warrant was directed, sealed it with the great seal, or other seal of the officer named in the warrant.   After sealing, it was to be enrolled, and thereupon the grant became complete.

In 2 *Blackstone's Com.* 346, 7, it is said grants or letters patent must be first by bill, which is prepared by the attorney and solicitor general, in consequence of a warrant from the crown, and is then signed, that is, subscribed at the top, with the king's own sign manual and sealed with his privy signet, and then sometimes it immediately passes under the great seal ; in which case the patent is subscribed *"per ipsum regem."*   Otherwise the course is to carry an extract of the bill to the keeper of the privy seal, who makes out a warrant thereupon to the chancery ; so that the sign manual is the warrant to the privy seal, and the privy seal is the warrant to the great seal, and in this last case the patent is subscribed, *"per breve de privato sigillo."* (8 *Coke*, 18 (*b*).)

The extract from Blackstone explains why, upon the enrolment, there is no notice taken of the sign manual, or the signet or privy seal.   They were merely intended as evidence to those holding the seals that they are authorized to affix them.   And the case of *Williams* v. *Sheldon* furnishes the excuse for the absence of the great seal, which is that it was appended to the patent, and not impressed upon it ; therefore no notice of the seal could well be taken.

By *section 1st of chapter* 308, *of the Laws of* 1858, the

commissioner appointed by the governor of this state was authorized, amongst other things, to certify the existence of any patent remaining of record in any public office or official custody in Great Britain and France, and the correctness of a copy thereof, and his certificate, authenticated by the secretary of state, as in said section required, as to the existence or correctness of a copy of such patent, shall have the same effect to authorize the reading in evidence, of such patent, as is given by law to the certificates of justices of the Supreme Court, or to any certificate or exemplification by any officer of this state, of any patent. By the 8th section of the same chapter, a copy of a patent certified as therein provided, may be read in evidence in any court of this state. The commissioner appointed for the city of London, pursuant to this statute, certifies that a document purporting to be a copy of a patent, is a correct transcript of the original enrolment remaining of record in the public record office at London, and of the whole of such original enrolment, and that the said patent is in existence and remains enrolled of record in said office, and that said office is the proper place wherein the public records of Great Britain are preserved.

It seems to me that the existence of the enrolled patent is fully proved; that it is found in the appropriate place for such a document; the copy presented is a correct transcript of such enrolled patent; and the original patent was executed in due form of law to pass the title to the land therein described, to Sir William Johnson.

The second objection to the copy of the patent, to wit, that it does not appear that a patent was ever granted, is fully answered by the certificate of the commissioner, and by the form of the patent itself. It shows upon its face that it passed through all the forms required by law. The objection to the absence of the privy and great seal have already been answered.

The right of the king to grant lands belonging to the

crown could be exercised without an act of parliament. The parliament might, doubtless, require lands to be granted, but the grant was made by the crown. In such case it was delivered, in the attesting clause, to the donee with the consent of the parliament. Grants of land in the colonies were made under the direction and by the advice of the lords of trade, as will be seen by reference to the 3d volume of the Documentary History of New York. There is no date to the patent, nor are any means furnished by which it can be ascertained, except that it purports to have been made in June of some year during the reign of George the 3d. The want of a date does not vitiate a deed; and as the year is not material, no adverse title having its origin in that reign being shown, I think it may be assumed to be during some year prior to the revolution, and at a time when the king might rightfully make the grant. As the law of England required a patent to be enrolled, it must have been enrolled there. As well might we expect to find a decree of the English chancery enrolled in New York, as a patent of the king. The enrolment is made when the patent issues, or decree is rendered, and must be in the country where the act is done. If there was any law requiring a patent from the crown to be deposited or recorded in the colony where the land conveyed lay, it is incumbent on the defendant to show it. In the absence of such proof, the record was found where it should be.

It is objected that it does not appear that the public record office is the office where the enrolled patent should be found, and that the fact could not be proved by either the certificate of the keeper of the public records or of the commissioner, and the certificates are not competent to prove that fact. The commissioner is authorized to certify to the existence of any patent, record or other document. To do this he must satisfy himself that the place where the record is found is the place where by law it should be found. The certificate that the record

exists implies that he has found it where it should be found. But it may be said that it is the original patent, record or document, only, to whose existence he is thus authorized to certify. If this should be held to be the meaning of the statute, it would be practically valueless, as it must be presumed that but few of the originals, executed as long ago as the reign of George the 3d, exist. Sections 8 and 9 of the act of 1858 makes a duly certified copy of any patent, record or document remaining of record in any public office in any foreign kingdom, evidence in any court in this state. It is thus made certain that the existence of the original is not essential to permit a copy to be competent. I entertain no doubt but that the copy was admissible.

The next question is, was the will of Sir William Johnson sufficiently or properly proved? By the certificates of Lefferty, as surrogate, at the end of the copy of the will, in the case, it appears to have been proved before him on the 25th day of July, 1774. By the colonial law the power to admit wills to probate was vested in the governor and such deputies as he should appoint for the purpose. Under this power surrogates were appointed, who admitted wills to probate, with the same force and effect as if done by the governor himself. For some reason this mode of proving the will was not satisfactory, and it was again proved or attempted to be proved in some court of the state, under the act relating to the proof of wills, passed February 20, 1801; and one of the important questions is, whether it was proved in conformity to the provisions of that act. (*Laws of* 1801, *ch.* 9.) By the sixth section of the last mentioned act it was provided that wills of real estate might be proved in a court of common pleas, for which purpose the witnesses to said will, if living, were to be examined in open court, but if dead, or residing out of the state, proof of the handwriting of the testator, or of the witnesses or witness, was to be taken

in open court; the proofs so taken were to be reduced to writing, and if it appeared, by the proof, that the will had been properly executed, and by a person legally competent to make a will, the court required their clerk to record the will and the proofs so taken; and a copy thereof had the same force and effect as the original will. By section 9 of the same act it was provided that if the land devised by any will lay in several counties, then the will was required to be proved in the Supreme Court, in the same manner as by the 6th section they were required to be proved in the common pleas. By *Chap.* 77 *of the Laws of* 1801, wills of personal estate were to be proved before the judge of the court of probate. The copy of the will received in evidence is preceded by a recital, setting forth that on the first day of August, 1808, Peter Smith, by his attorney, brought into court the last will and testament of Sir·William Johnson, and prayed that it might be proved and recorded; that due proof of service of notice of such application on the heirs of the testator was made, and that one of the witnesses to said will was duly sworn in open court and testified to the several matters required by the statute·to be proved in order to admit said will to probate; that it was thereupon ordered that the will be recorded. And a copy thereof is then given, and at the close of the document are the words, "Examined and compared with the original by me. Fr. Bloodgood, clerk." This concluding clause of the certificate means, I infer, that Mr. Bloodgood had examined and compared the record so made by him, with the proof taken and original will, and that the record was a true copy of the same. If the proof of the will and the record were made in a court of competent jurisdiction, it follows that the will was properly proved. The title of no court is given; nor is there anything in the paper showing in what court the proceedings·were had; unless the name of Mr. Bloodgood, who subscribes himself as clerk,

shall be competent evidence to prove what court it was in which the will was proved and recorded.

The court will take judicial notice of its own officers, who they are, and the genuineness of their signatures. (2 *C. & H. Notes*, 1165, 1247.) That Francis Bloodgood was clerk in 1801, the court knows judicially, and that fact must be assumed. It follows that the will was proved, and the record made, in the Supreme Court, and that court had by law jurisdiction to admit the will to probate. It was admitted, and was sufficiently proved. The copy of the will &c. was probably competent under § 16, 3 *R. S., 5th ed. p.* 140. The book in which the record was made by the clerk, of the proof, and of a copy of the will, was the property of the court, and one of its books of record. That book passed, by § 69 of the judiciary act of 1847, to the clerk of the Court of Appeals, who was authorized to furnish certified copies of all records transferred to him pursuant to said statute. His certificate being in due form, I think the will was properly received in evidence.

The memorial of Sir William Johnson, contained in the 7th volume of the Colonial History, was immaterial. The existence of the patent was sufficiently proved without it, and it was incompetent upon any other branch of the case.

The motion for a new trial was predicated on several of the propositions above discussed, and it is therefore unnecessary to repeat them. The other propositions not examined I will now refer to, briefly. Amongst the grounds relied on for a nonsuit, the defendant's counsel insisted that the plaintiff had shown title to but one-fortieth part of the land, as the grant from the crown was to him and thirty-nine others. The will of Sir William assumed to dispose of the whole tract conveyed by the patent, which he could only do on the assumption that he had in some way acquired these portions by grant or otherwise from them. No such grants were

proved, and unless the facts proved authorize a presumption of such grant the plaintiff could not recover. It is proved that no such grants are found on record. It was held in *McKinnon* v. *Bliss*, (21 *N. Y.* 206,) following *Jackson* v. *Lunn*, (3 *John. Cas.* 109,) that a conveyance might be presumed to a person in possession who had for many years exercised acts of ownership on the lands, and his heirs had done so after his death ; and where his and their title was acknowledged by those in possession as tenants. There is no proof in this case that an occupant of the land ever admitted holding under Sir William. There is some evidence that one or two admitted that they held under one or other of his devisees, but there is no evidence of any general recognition of the title of any one claiming under the patent. It is true that it clearly appears that the consideration for the grant moved from Sir William alone, and that, as between him and his associates, he was equitably entitled to the whole ; but legally each of them was equally entitled with him ; and had it been shown that he or those claiming under him had exercised exclusively acts of ownership over the land for any considerable period of time, I should hold that releases might be presumed. But there are no facts which can reasonably be held to have any such operation. I do not think enough was proved to authorize the inference of a grant from the thirty-nine other owners to Sir William.

If proof of the loss or destruction of the original was necessary to admit proof of the copy certified by the commissioner, no sufficient proof was offered. The tradition was established by the same evidence which was held insufficient, in *Mackinnon* v. *Bliss*, (*supra.*) But if I am right in supposing that the copy is as high evidence of the grant as would be the original, then the evidence becomes immaterial, and its reception does not vitiate the verdict.

I think we are bound to presume that the grantees accepted the grant. Indeed this is fully established, as to Johnson himself, by his assuming to dispose of the lands by will. Whether the premises in controversy are covered by the patent is usually a question for the jury ; and where the evidence is conflicting it should go to them. The map is not before me, and I am unable to say whether the evidence is *prima facie* sufficient to maintain the action. I do not find that any evidence was given on the point, by the defendant, so that there was no conflict of evidence on the point, and there was therefore nothing for the jury. No survey has ever been made of the land enclosed in and covered by the patent ; and until that is done, it is impossible to say whether there was or was not land enough to enable the devisees under the will to obtain the portions devised to them respectivly. If there was not enough for all, then the devisees took in the order in which they are devised, and if there is not enough for all, the last named will get nothing. This is true only where the land of one devisee adjoins another. Where the lands are different portions of a tract, each devisee will take the part allotted to him, and the order in which they are named in the will will not control their shares.

Because of the absence of any competent evidence that possession has followed the patent, I think the plaintiff was not entitled to recover, and the motion for a new trial should be granted.

New trial granted.

[Onondaga General Term, June 25, 1867. *Morgan, Mullin, Bacon* and *Foster,* Justices.]