J. M. Lindsay v. E. S. Jaffray et al.

(Case No. 4236.)

1. Trespass to try title — Equitable title — Land certificate. — Land was patented in the name of a patentee who had died thirty years before. Thirteen years before the patent issued the heirs of the patentee sold the certificate by virtue of which the land was patented through an agent to an unknown party. In trespass to try title, brought by those claiming under transfers of the certificate, subsequent to the sale by the heirs, but who were unable to connect themselves with the original unknown vendee of the heirs, and against a defendant who claimed under *quit-claim* deeds made by the heirs after suit began, *held,*

(1) It was not necessary to the validity of the sale by the heirs that it should have been in writing.

(2) The possession and apparent ownership of the certificate being shown in the vendor of the plaintiff, in the absence of evidence connecting the defendant with an outstanding equitable title, derived by purchase through the party to whom the heirs first sold, such equitable title cannot be available as a defense.

2. Jurisdiction.— When the authority of a court is exercised by the rendition of judgment, and the judgment is satisfied, its authority

is exhausted, and all proceedings afterwards had by it without notice to those who acquired interests under it, are absolutely void.

3. DEPOSITIONS — PRACTICE.— Whilst it is true that notice must be given in writing and before trial of objections to a deposition, that an interrogatory had not been fully answered, a different rule prevails when the objection is that the answer of the witness pertains to matters about which he had not been questioned; in the latter case the objection may be made orally on the trial.

4. PRACTICE.— A judgment rendered after trial without the intervention of a jury will not be reversed because improper evidence was heard by the judge.

5. EVIDENCE.— When a suit is brought in a firm name, and the individuals composing that firm are stated in the petition, no necessity exists for proving who compose the firm, unless the partnership be denied under oath.

6. PROBATE SALE — RIGHTS OF PURCHASER UNDER IT.— Land was purchased under an order of the probate court having jurisdiction; the sale was confirmed, purchase money paid, and deed executed; afterwards, under order of the district court, exercising probate jurisdiction, the same land was again sold to one having no knowledge of the previous sale, and the deed of the first purchaser was not recorded in the county where the land was situated at the time the second sale was made. *Held,*

(1) The title of the first purchaser was not affected by the want of notice in him who purchased at the second sale, after the authority of the court in selling the property had been exhausted in ordering and confirming the first sale.

(2) The title was in the first purchaser.

7. MISTAKE — FACT CASE.— See latter portion of opinion for facts under which it was held that an order of sale by the probate court describing land as situated in one county, when in fact it was in another, was so corrected by other portions of the order and inventory as to render the mistake evident, and make proper (there being no other objections) the order of confirmation.

APPEAL from Cooke.  Tried below before H. E. Eldridge, special judge.

Suit in trespass to try title brought in the district court of Cooke county, April 9, 1879, by the appellees against appellant.  In their petition, appellees alleged that they were the joint owners of an undivided interest of nine hundred acres out of two surveys in the name of William

Moore in Cooke county, the first containing one thousand one hundred and thirty-five acres and the other two hundred and six acres, and that appellant owned the remainder of surveys, but had ousted appellees therefrom, etc. Appellant answered by pleas of not guilty and limitation of five years. The suit was tried by the court without a jury, and judgment rendered in favor of appellees for an undivided interest of six hundred and forty-one acres out of the surveys, and commissioners appointed to partition the land by allotting six hundred and forty-one acres of the same to appellees and the balance to appellant. From this judgment appellant appealed. A statement of facts was filed, and in addition to this the judge, in accordance with the statute, stated the conclusions of law and fact found by him, and these were excepted to by appellant, and complained of in a motion for a new trial.

The appellant relied upon the second, third, fourth, fifth, sixth, ninth and tenth grounds specified in the assignment of errors.

The plaintiffs claimed title under sale and deed, made to them by the administrator of the estate of C. A. Bulkley on the 4th day of January, 1870. The defendant purchased the same land, at a like administrator's sale, under order of the same probate court, as the property of the same estate, at a subsequent period, viz., in December, 1871. The plaintiff introduced the evidence of the defendant's purchase in connection with his own evidence of title, in order to establish the fact that their titles, respectively, were derived from the same common source. The defendant introduced record evidence of the probate court of Grimes county, showing regular proceedings of the sale to him, and an order confirming it, and admitted his possession of the land in dispute.

It was proved that the land was patented to William Moore on the 26th day of February, 1872 (who died in the year 1842), by virtue of a duplicate certificate, unlo-

cated balance of said Moore's headright certificate. Mrs. Morse and Mrs. Rudd are his daughters and only heirs; they conveyed by quit-claim deeds the land in controversy to the defendant, after the institution of this suit and before the filing of the answer. The court, in its finding upon the facts, determined from the evidence that the heirs sold in the year 1859 the certificate by virtue of which the land was patented, through their agent, Shackleford; that C. A. Bulkley in his life-time derived title to the land under a conveyance to him by deed from E. Terry, dated 9th of March, 1863; that he had owned the certificate under which the land was located and surveyed, by a chain of transfers thereof, as follows: from C. A. Bulkley to Lewis Moody; from Moody to Ephraim Terry; which transfers were made sometime during the years 1857 to 1860. Terry conveyed the land to Bulkley in 1863. The court found that "the evidence was not sufficient to prove the original transfer of the certificate from the heirs of William Moore to Bulkley."

The plaintiffs (appellees), as has been stated, acquired their title by purchase in 1870 at a sale ordered by the probate court of Grimes county in the matter of the estate of C. A. Bulkley. The order of sale directed the sale of about sixty thousand acres of land situated in different counties, among which certain land was described as follows:

"FANNIN COUNTY, TEXAS.

"Nine hundred acres of land, deed of E. Terry for about one thousand six hundred acres, except seven hundred acres for locating, leaving as above nine hundred acres. Deed dated March 9, 1863, recorded May 21, 1863."

In the report of sale the lands were described in the same way, and were expressly stated to be in Fannin county. In the decree of confirmation the lands were not described, except by reference to the report of the sale. In the administrator's deed, however, the land was de-

scribed as being in Cooke county, but the deed was not filed for registration in Cooke county till the 3d day of February, 1875. Afterwards, in the year 1871, the district court of Grimes county, in the matter of the estate of Bulkley, ordered the sale of certain lands as the property of that estate, including the lands in dispute, and at the sale made under this order, which took place on the first Tuesday in December 1871, appellant became the purchaser, at an average price of about seventeen cents per acre. This sale was confirmed, and on the 5th day of March, 1872, the administrator, upon the payment of the purchase money, executed to appellant a deed in due form. Appellant proved, and the court so found, that at the time he bought and paid for the land in dispute, he did not know that the same had been previously sold, or that appellees had any claim thereto. The court further held that the land sold to appellees, and the land afterwards sold to appellant, was the same, and gave judgment in favor of appellees.

The land is situated, not in *Fannin* county, Texas, but in *Cooke* county, Texas.

The other facts, so far as they need to be stated, are given in the opinion.

The errors assigned mainly involve the question whether the court erred in rendering the judgment for the plaintiffs upon the facts as found.

*W. O. Davis*, for appellant.

I. By virtue of the quit-claim deeds from Mrs. Morse and Mrs. Rudd, appellant acquired at least the legal title to the land in dispute, which gave him the right to hold the same as against every one except the equitable or real owner. Shields *v.* Hunt, 45 Tex., 427; Fitch *v.* Boyer, 51 Tex., 348.

II. Appellant having proved a regular chain of title from William Moore, the grantee of the land in dispute,

down to himself, the burden was upon appellees to prove either an older legal title or that they were the equitable owners. Shields *v.* Hunt, 45 Tex., 427; Fitch *v.* Boyer, 51 Tex., 348; Keys *v.* Mason, 44 Tex., 143.

III. There was no proof that appellees were partners at the date of the deed, or at the date of the suit or at any other time. R. S., arts. 4786, 4792; Blair *v.* Cisneros, 10 Tex., 40.

IV. The court erred in not holding the sale to E. S. Jaffray & Co. void for uncertainty and error in description of the land attempted to be sold. Wofford *v.* McKinna, 23 Tex., 44; Norris *v.* Hunt, 51 Tex., 612; Rorer on Jud. Sales, secs. 500, 883; Freeman on Executions, secs. 281, 330.

V. The court erred in directing partition of the land.

*C. C. & C. L. Potter*, for appellee.

WALKER, P. J. COM. APP.— The questions presented under the assignment of errors which relate to the merits of the titles under which the plaintiffs and the defendant respectively claim, involve a comparison of that one which was acquired by the plaintiffs at the administrator's sale which was first made, with each of the two separate and distinct titles under which the defendant claims; one of which is derived from the heirs of the original grantee from the government, and the other is from the administrator of the same estate under which the plaintiff claims, by virtue of a sale subsequently made.

If the defendant can successfully maintain that the title he derived from the heirs is a valid conveyance of the rights vested in them to the certificate by inheritance, and that when they conveyed to him they were, at that time, still the owners of said interest, he would have established, at least *prima facie*, a perfect title in himself from the sovereignty of the soil, through a consecutive

chain of title; it would be superior to any which could be derived from Bulkley's administrator.

The court found on the facts that the transfers of the certificate, made between the years 1857 and 1860, taken in connection with the entire testimony which related to the subject, was not sufficient to establish the existence of a transfer of the certificate made by the heirs of William Moore to C. A. Bulkley. From which finding it follows that the better title may possibly have been outstanding in the heirs from whom defendant claims under their quit-claim deeds, unless they or their ancestor had sold the certificate before they made said deeds to the defendant.

If, however, they had, prior to that time, conveyed or transferred it to another, the defendant could have derived no title under their quit-claim deeds to lands in which they had no interest. The conclusion of law by the court, upon the evidence which was before him, was as follows: "No title passed to the defendant, J. M. Lindsay, to the land in controversy by virtue of the quit-claim deeds from Mrs. Morse and husband, and Mrs. Rudd and husband to defendant, because they had no title to convey to him, having sold their interest in the certificate in 1859, by virtue of which said land was located."

Although the judge who tried the case found upon the facts that there was no sufficient evidence to prove a transfer of the certificate from the original grantee or his heirs to Bulkley, he distinctly found, nevertheless, that those heirs did, in the year 1859, sell the land certificate, through their agent, John Shackleford, to some person who is unknown to them. The heirs referred to were witnesses, and testified to that fact explicitly. Their conveyance by quit-claim deeds to the defendant was made in the year 1879 — twenty years subsequently. They were introduced by the defendant as witnesses in his behalf. There was testimony tending to corroborate

theirs. Terry testified directly, indeed, that when he bought the certificate it was accompanied by a written transfer from C. A. Bulkley to Moody, and by one from Wm. Moore or his heirs to C. A. Bulkley; and also that he remembers that he thought the chain of title to the certificate was perfect.

Lewis Moody testified that when he bought the certificate it was accompanied with a written transfer from some one to Bulkley, but did not remember who it was.

The finding of the court was well supported by the evidence. It appeared clearly, and without contradiction, that Mrs. Morse and Mrs. Rudd did sell the land certificate to some person; and the evidence allows the suggestion at all events, without contradicting the testimony of E. Terry, that they may have transferred the certificate by written assignment in blank (a mode of transfer of land certificate not uncommon at that day), which might be filled with the name of the holder or purchaser. But whether Bulkley did in fact have an assignment in writing from the grantee or his heirs, or not, or whether he had even a transfer of the certificate by a parol contract without writing from them, or either of them, or not, does not affect the legal result. The court found that the heirs had sold, and had no remaining interest in the land to release or convey, when the defendant acquired quitclaim deeds from them.

Their long acquiescence strongly tends to confirm the idea that the sale made by Shackleford was a valid one. It was not necessary to its validity that it should have been made in writing. Cox v. Bray, 28 Tex., 247.

The defendant has therefore failed to establish in himself a title older and superior to that of Bulkley; nor does the evidence prove an outstanding title in a third person to the land superior to that held by Bulkley's estate. After the sale of the certificate by Shackleford, as agent, to some unknown person, the intermediate owners,

if such existed, are not discovered by the evidence; and the possession and apparent ownership of the certificate is found in C. A. Bulkley, in whose estate, therefore, the equitable title to the land seemed to be vested at the time of his death, unless some prior assignee of the certificate under the sale by Shackleford, as agent, may be supposed to have owned it. The proof failing to indicate any such supposable owner, it cannot certainly be said that there is any evidence of the real existence of such outstanding equitable title.

The patent to the land having issued to the original grantee, the supposed outstanding title, if such there is, must, of necessity, consist of the equitable title; and the defendant does not show himself to be connected with it, and in such case he cannot plead it in his defense. Johnson v. Timmons, 50 Tex., 521; Shields v. Hunt, 45 Tex., 425. "The court will not, in order to defeat a recovery, regard a possible although doubtful equity in a third party." Portis v. Hill, 30 Tex., 529.

There being proof of a sale of the certificate by the sole heirs; the certificate being personal property, and the subject of sale, without the necessity of a written assignment, in order to pass the title, the possession and claim of it under transfers in writing from persons holding it under like claim would not be inconsistent with the supposition that there existed no other true owner of it than the person who claimed it and held it under the transfers which were in evidence; and hence it is plain that no outstanding superior title was shown by the defendant. See the case of Keyes v. H. & G. N. R. R. Co., 50 Tex., 170.

The further comparison of the titles relied upon by the parties narrows the inquiry to the question whether, as between the two administrators' deeds, under which the parties respectfully claim, the junior one can prevail over that one which, although senior to it, was yet not re-

corded at the date of the second sale, at which the defendant purchased, for value, and without actual notice of the prior sale of the land to the plaintiffs.

The plaintiffs purchased the land in 1870 from the administrator of C. A. Bulkley, at a sale made in obedience to an order of the probate court of Grimes county, where the estate was administered; the sale was confirmed by that court, the purchase money paid, and administrator's deed made to the purchasers. Afterwards, in 1871, the district court of Grimes county, then exercising probate jurisdiction in the matter of the estate of said Bulkley, ordered the same land to be sold, which was done, and the defendant purchased and paid for it; and the sale was confirmed and deed made to him. The defendant did not have any knowledge of the previous sale, nor was the plaintiffs' deed recorded in the county where the land situated. The court held, as a conclusion of law upon the facts, that the defendant could not be an innocent purchaser of the land, the records of the estate showing that the land had been previously sold to E. S. Jaffray & Co., which amounted to constructive notice to him of the purchase; consequently ignorance in facts on his part of the prior sale will not avail him. The appellant assigns this conclusion of law as error.

Upon these facts, in transactions between vendors who convey in their own right of ownership, under the well settled interpretation of our statutes of conveyances and registration, the defendant would acquire a valid title as against that of the plaintiffs. Whether conveyances of land, made by decree of the probate court exercising jurisdiction over the estates of deceased persons, are governed by these same rules of law in all cases, is presented here as the question to be determined.

The abstract equity and justice applicable to both the instances supposed may be the same, so far as concerns the innocent purchaser; yet, if a sale made, and a con-

veyance under it, in any case, is for any reason an absolute nullity, no right to the land thus pretended to be conveyed can be derived by the vendee irrespective of considerations relating to a prior or a conveyance of the land to another person.

This principle is applicable to the case which is now under consideration. The land was wholly withdrawn, and in every respect exempt from the jurisdiction of all probate courts. The plaintiffs held and owned it by a perfect title, and neither the probate court or the district court of Grimes county exercising in 1871 probate jurisdiction, possessed any jurisdiction whatever over the plaintiffs' estate in property; the circumstance that they had derived their title to the land through the action of that court whilst the property in controversy was subject to its jurisdiction, does not in any wise tend to protract or continue its right to affect its actual owner acquiring it by a valid judicial sale, by means of an attempted exercise of control or jurisdiction concerning it. If the sale was a valid sale, one which divested both the heirs and creditors of the deceased C. A. Bulkley of any further claim upon it through the probate jurisdiction of the district court, it must result that any order made afterwards to sell the same land would not have the support of a rightful jurisdiction. If, under any supposable case, it could be admissible to order again the sale of the land, whereby to affect the rights of the purchasers, notice to them would have to be given, before they could be injured in them by such proceedings. They could not be bound by a decree of court depriving them of their property, except under "due process of law." From the case stated, under the findings of the court, and as appears, too, from the evidence, the district court exercising probate jurisdiction did not have jurisdiction over this land; it had been wholly expended and exhausted when the title to the property had been lawfully transferred by its

own formal and conclusive decree, from the estate of
Bulkley to a purchaser of it.

Withers *v.* Patterson, 26 Tex., 500, is cited by the
appellee's counsel in support of the proposition that
the court did not have jurisdiction to order the second
sale. That case decides that where the court's juris-
diction to administer the estate has been exhausted
by the closing of the estate, and the administration
at an end, before the grant of letters to another ad-
ministrator, that any sale made under the last named
administration would confer no title; the court having no
jurisdiction to grant administration. Justice Bell, in the
opinion which he delivered, discussed the reasons and
foundation upon which he rested his deductions, and
among other supposed cases taken to illustrate the inva-
lidity of a title derived through a sale made and confirmed
by the orders of a probate court which possessed no
jurisdiction over the subject matter to which the order
related, instanced the precise facts which the question
under discussion involves; and upon the case which he
thus supposed, expressed the opinion that the second sale
would manifestly convey no title to the purchaser (to
quote his language), "simply because the court had no
power to order the sale at which he purchased. The land
did not belong to the estate. The power of the court to
order the sale of the land had been exercised and ex-
hausted. Yet C. (the purchaser at the second sale) may
have been entirely ignorant of all this, and, independent
of the former proceedings of the court, would be able to
exhibit a good title in himself. But when the former
proceedings of the court are shown, then it is manifest
that C.'s title or claim of title is an absolute nullity; and
this, not because C. was chargeable with notice of B.'s
title, but because of a total want of power in the court to
make the second order of sale. Whenever there is a want
of power in the court, its act is a nullity, no more and no

less in one case than in every other, and without regard to the particular facts and circumstances." Withers *v.* Patterson, 26 Tex., 501.

The views above expressed by Justice Bell, although not authoritative as being the opinion of the court in that case, because not essential to its determination, are, nevertheless, as we conceive, indisputably correct.

This doctrine which was applied in Withers *v.* Patterson has been otherwise applied to administrators' sales made under orders of the probate court, where the want of jurisdiction to make them arose from grounds different from that in Withers *v.* Patterson. Wardrup *v.* Jones, 23 Tex., 494; Harrison *v.* Graves, 26 Tex., 579. It is, indeed, but fundamental law, applicable to all judicial sales, that, wanting the authority of an order or judgment of a court possessing jurisdiction over the subject matter, no title is conveyed under them. And where the judgment is rendered by a court having jurisdiction to render it, whenever the judgment is satisfied the preponderance of authority, according to Mr. Freeman, is that all proceedings taken subsequently to the satisfaction are absolutely void. Freeman on Executions, sec. 19. "The purchaser, under a power, is chargeable with notice if the power does not exist, and purchases at his peril." Id., citing Craft *v.* Merrill, 14 N. Y., 456. It is not sufficient that the judgment on which execution issues appears to be final and is perfect in form. It must, at least, be so far valid as to be impregnable to collateral attack. Freeman on Executions, sec. 20. "A void judgment is in legal effect no judgment. . . . A purchaser at a sale by virtue of its authority finds himself without title and without redress." Freeman on Judgments, sec. 117.

In these various instances where judicial sales may be made under apparent authority, and of seeming legal sanction, and the purchase is innocently made in igno-

rance of the invalid and insufficient authority under which
they in fact are made, it is seen that the consequences
which result from them are attributed to the same cause
which Justice Bell assigns to the invalidity of a second
sale of the same property, made by a probate court — the
want of authority to order it to be made; regardless of
all circumstances of diligence and care or the want of it;
notice or the want of it; or of good faith, and the pay-
ment of the purchase money by the purchaser.

The fifth ground of error is to the admission, over the
objections of the appellant, of the answers of Mrs. Morse
to the tenth cross-interrogatory of the plaintiffs, contained
in her depositions.   The question asked did not require
the answer which she made, to the effect that she and her
sister, Mrs. Rudd, had sold the certificate by virtue of
which the land in controversy was located.   The objection
was made verbally, and was overruled because it was not
made in writing, and notice given before trial.   The cor-
rectness of this ruling cannot be sustained upon the
ground stated by the court.   The case of Scott v. Delk,
14 Tex., 341, does not apply; the question here is wholly
different from that presented by an objection that a cross-
interrogatory had not been fully answered, as was the
point in that case, where it was held necessary that such
an objection must be in writing, and before the trial.   The
defendant did not object to the failure of the witness to
answer concerning all that she was asked, but the objec-
tion was, in effect, that her answer related to that con-
cerning which the witness had not been interrogated.

There was, however, evidence sufficient without the
testimony excepted to, to support the judgment which
was rendered.   If the evidence is merely cumulative, and
there is sufficient evidence without it to support the ver-
dict of a jury, a new trial will not be granted.   "A judg-
ment will not be reversed on account of the improper
admission of testimony, when the other facts in evidence

and the legal presumptions are sufficient to sustain the verdict." Daily v. Starr, 26 Tex., 562.

This case having been tried before the court without a jury, the rule applies, that, when there is sufficient competent evidence to sustain the judgment, it will not be reversed on account of the erroneous admission of evidence. Clayton v. McKinnon, 54 Tex., 206; Melton v. Cobb, 21 Tex., 539; Beaty v. Whitaker, 23 Tex., 526; Smith v. Hughes, 23 Tex., 248. If the testimony objected to, and which was admitted, be disregarded, it does not appear that the judgment was manifestly erroneous, which must appear where the cause has been submitted to the court without a jury, to warrant a reversal. "To authorize a reversal in such case, it is not sufficient that the evidence admits of a different conclusion from that at which the court arrived; nor that some of the reasons assigned for its decree by the court below may not be sustained by the evidence, or may be contrary to the weight of the evidence." Bird v. Pace, 26 Tex., 487. We do not, therefore, think that this ground of error is well taken for the reversal of the judgment.

The eighth assignment of error is as follows: "The court erred in finding for plaintiffs, there being no proof that plaintiffs composed the firm of E. S. Jaffray & Co. at the time of the commencement of this suit, or at the date of the deed from C. S. Taliaferro, administrator, etc., to E. S. Jaffray and Co."

In the report of sale made in 1870, through which appellees claim the land in dispute, said land was reported as sold to " E. S. Jaffray & Co." In the deed made pursuant to said sale, said land was conveyed to "E. S. Jaffray & Co." In the decree of confirmation the name of the purchaser was not given. Appellees' petition was as follows: " Petition of E. S. Jaffray, John W. Barrow, Robert Hutcherson, E. M. Barrow, William P. Jaffray and Howard S. Jaffray, who reside in the city

and state of New York, and who are traders under the firm name and style of E. S. Jaffray & Co., complaining of J. M. Lindsay, who resides in Cooke county, Texas, would with respect show to the court that heretofore, to wit, on the 5th day of March, 1872, these petitioners were and are still the joint owners and were lawfully seized and possessed of an undivided interest of nine hundred acres in and to the two following surveys of land," etc.

Appellant's pleas were not guilty and limitation of five years.

There was no proof that appellees were partners at the date of the deed, or at the date of the suit, or at any other time.

The conveyance to "E. S. Jaffray & Co." had the effect to vest the legal title in E. S. Jaffray, in trust for the partners composing that firm. 1 Washburne on Real Prop., p. 574; McGuire v. Ramsay, 4 Eng. (Ark.), 518; Moreau v. Safferaus, 3 Sneed, 595. The equitable ownership was therefore in the plaintiffs as members of the firm, and they had a right to sue for the recovery of the land. Deriving their title, however, through a deed to the partnership, it was necessary for them to prove upon the trial that they were the members of the firm to whom the deed was made, unless they are relieved from that necessity by the provisions of article 1265, subdivision sixth of the Revised Statutes, which requires a denial of the partnership as alleged in the petition to be made under oath. We think a fair construction of that article does dispense with the necessity of making that proof, and that the partnership not being denied under oath, it is to be taken as proved as alleged.

The ninth ground of error is that the court erred in not holding the sale to E. S. Jaffray & Co. void for uncertainty and error in description of the land. The order indicates that the land was situate in Fannin county, and

whereas, in truth, it was in Cooke. No other error is observed except this. The land is identified in the order by describing it as land which was deeded to the intestate by E. Terry; the order describing the tract by amount or number of acres conveyed, the date of the deed, and the statement that the deed was recorded May 21, 1863. The deed referred to was in evidence; it showed the land to be in Cooke county, and the description of the land corresponded in every particular with the order of sale, except as to the county. The evidence showed that the land was inventoried on the 9th of January, 1867, describing the land as being in Cooke county, deeded from E. Terry, and describing it otherwise precisely as described in the order. Evidently there was a plain, palpable mistake in the heading of the order, "Fannin county, Texas;" a mistake which the inventory explained and corrected, and which the recitals in the order, referring to Terry's deed of record, also corrected with absolute certainty. The mistake thus made by misdirection merely, really, as to where the land was situated, clearly did not render it impossible to ascertain whether its locality could be truly ascertained through the description of its identity as contained in the order when considered as an entirety.

The order of the court confirming the sale described it as lying in Cooke, the true and proper county. The deed to E. S. Jaffray & Co. alike thus described it. The discrepancies upon which this ground of error relies do not show that the description given in the order of sale was such that it either in fact described other and different land than that deeded by Terry, or that it was so contradictory in the description that its identity could not be definitely ascertained, and, consequently, the order was not void for the reason urged by the appellant.

The tenth ground assigned as error is that the court erred in directing the partition of the land in dispute

between plaintiffs and defendant and in appointing commissioners.

The title of appellees was as set forth in the statement under the ninth assignment, and the court found for the appellees an undivided interest of six hundred and forty-one acres in the two surveys set forth in their petition, which was the amount of said surveys less the seven hundred acres, locative interest. The court also appointed commissioners, and directed them to partition said land by allotting to appellees six hundred and forty-one acres of the same and allotting to appellant the remainder.

It is urged in support of this assignment that there was no proof that the defendant owned said locative interest, and so far as the record shows it still belongs to Whaley, and that neither Whaley nor any one claiming through him was a party to the suit; citing Freeman on Co-tenancy and Partition, sec. 463.

No interest in any of the tracts of land in controversy appearing to be owned by the defendant, and there being no other party to this suit with whom partition can be made, the court erred in ordering it to be made, and the judgment ought to be reformed so as to set aside so much of the decree as relates to such partition; and we conclude, upon the whole case, that in all other respects the judgment ought to be affirmed.

AFFIRMED (except as to partition).

[Opinion delivered November 21, 1881.]