### J. M. West Lumber Company et al. v. Cecil A. Lyon et al.

Decided February 13, 1909.

**1.—Trespass to Try Title—Immateriality of Equities.**

In an action of trespass to try title, where both parties relied upon a legal title derived from a common source, antecedent equities of the respective parties considered, and held immaterial, the sole question being as to the superior legal title.

**2.—Sale of Land—Constructive Notice.**

The registration of a deed is not the only means by which a junior purchaser of land may be charged with constructive notice of a prior sale of the same. Parties to a bankruptcy proceeding will be charged with notice of sales of land ordered by the bankruptcy court.

**3.—Judicial Sales—Bankrupt Statute Construed.**

Under the provisions of section 70b of the present bankrupt statute, a sale by the trustee is valid without confirmation by the court only when the property is sold for not less than seventy-five percent of its appraised value, otherwise the sale must be confirmed by the court. In judicial sales the title passes by the order of the court confirming the sale, and not from the date of the trustee's deed.

**4.—Same—Second Sale, Void.**

When a judicial sale of property is once made by the court having the estate in charge, the jurisdiction of the court is exhausted, and a second sale of the same property is void.

**5.—Notice—Judicial Proceeding—Lis Pendens.**

The doctrine which charges all parties to a judicial proceeding with notice of the orders and judgments rendered therein, is distinct from the doctrine of lis pendens.

**6.—Vendor—Vendor's Lien—Trespass to Try Title.**

In trespass to try title the holder of a mere vendor's lien does not occupy the same position as the holder of the legal title reserved by the vendor.

Appeal from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*Hogg, Gill & Jones, O. T. Holt* and *W. H. Haynes,* for appellants.—
Where the records of the bankruptcy court showed that the land in con-
troversy was bid on and sold to J. E. McAshan, and the confirmation of
the sale showed the name of S. E. McAshan, and the deed was made to
the South Texas National Bank, the South Texas National Bank having
pleaded these facts, it was material for the South Texas Bank to show
that J. E. McAshan bid in the land for it, and that the name of S. E.
McAshan, in the order of confirmation, was an error. Dodd v. Temple-
man, 76 Texas, 57; Kinney v. Vinson, 32 Texas, 127.

The title of a bankrupt to real estate does not pass by the order of
sale or confirmation of the sale by the referee in bankruptcy, but by
the deed of the trustee in bankruptcy. United States Bankruptcy Act
of 1898, sec. 70; Brandenburg on Bankruptcy (3d ed.), sec. 1148, p.
737.

While all persons are charged with notice of bankruptcy proceedings
to the extent that they cannot deal with the bankrupt, or purchase
property from him, and thereby defeat the object of the bankruptcy
proceedings, yet they are not charged with notice of each and every
act of the referee and trustee in bankruptcy. Page v. Waring, 76 N.
Y., 463; 25 Cyclopedia of Law and Procedure ("Cyc."), pp. 1449 *et
seq.;* 2 Pomeroy's Eq., sec. 639.

When the Grand Lodge of Texas purchased the land in controversy
from the trustee in bankruptcy, it purchased the same subject to the
vendor's lien held by South Texas National Bank and others. Bran-
denburg on Bankruptcy (3d ed.), sec. 1196; Collier on Bankruptcy
(6th ed.), 610; In re Foundry Machine Co., 17 American Bankrupt
Rep., 293; In re Saxton Furnace Co., 136 Fed. Rep. 697.

*Andrews, Ball & Streetman,* for appellees.—The consideration for
the conveyance to Percy Allen, trustee, being the latter's undertak-
ing to pay the debts of his grantors, including that to the Grand Lodge
of Texas, and part of the consideration for the conveyance from Percy
Allen, trustee, to the Sam Allen Lumber Company, being the agree-
ment of the latter to pay all vendor's liens and mortgages and the in-
debtedness on the real estate held by said trustee, a lien existed upon
such interest as the said Percy Allen, trustee, and the Sam Allen Lum-
ber Company had to the property in controversy for the benefit of the
Grand Lodge of Texas, and the title acquired by the Grand Lodge of
Texas and by appellees from the latter is necessarily superior to any
reserved title in the said trustee. Tysen v. Wabash, 15 Fed., 766;
Barrett v. Lewis, 5 N. E., 910; Waller v. Janney, 14 So., 876; Carver
v. Eads, 65 Ala., 190; De-L'Isle v. Successors of Moss, 34 La. Ann.,
164; Trent v. Kyle, 48 Tenn., 663.

Even if the title acquired by the Grand Lodge of Texas, and from
it by appellees herein, be considered inferior to the vendor's lien re-
tained by Percy Allen, trustee, still appellees should recover herein, as
against defendants, who have not shown that they acquired the title
retained by Percy Allen, trustee, and in fact have shown no title what-
ever in themselves. Stephens v. Motl, 82 Texas, 86; Carey v. Starr,
93 Texas, 514.

Appellees having shown a superior title out of the Sam Allen Lum-

ber Company, bankrupt, the common source, the existence of the vendor's lien anterior to the common source is immaterial, because, in a proceeding of this character, it will be presumed that said lien was released in favor of the common source, appellants having failed to show that the common source did not acquire the superior title retained by Percy Allen, trustee. Cocke v. Texas & N. O. R. Co., 103 S. W., 408; Rice v. St. Louis, A. & T. Ry., 87 Texas, 92; Gordon v. Hall, 69 S. W., 221; Wade v. Boyd, 60 S. W., 361; Byne v. Wise, 31 S. W., 1069.

The question of notice by record of deed was not essential to be considered by the court in determining the question of title involved in the case, (a) because the bankruptcy court having exhausted its jurisdiction over the property in question by the sale thereof to the Grand Lodge of Texas, the sale to the South Texas National Bank was without jurisdiction and void, and the bank could not claim to be an innocent purchaser at such second sale; (b) because the South Texas National Bank was a party to the bankruptcy proceedings, and was charged with notice of the sale to the Grand Lodge of Texas; (c) because the sale to the bank being a judicial sale the bank was charged with notice of the sale to the Grand Lodge as disclosed by the bankruptcy records, and (d) because the bank had constructive notice of the sale to the Grand Lodge of Texas, by reason of the presence on the records of the county in which the land sold is situated of the deed of trust to satisfy which the land was sold by the bankruptcy court to the Grand Lodge, and actual and constructive notice of the indebtedness of the firms of Allen & Company to the Grand Lodge, which constituted a lien on the property held by Percy Allen, trustee, and by the Sam Allen Lumber Company.

The jurisdiction of the bankruptcy court over the property in controversy was ended and exhausted by its sale thereof to the Grand Lodge of Texas. Its subsequent sale thereof, under which appellants claim, was, therefore, without jurisdiction and void, and, being so, appellants acquired no rights thereunder, and can not be protected as innocent purchasers. Withers v. Patterson, 27 Texas, 500; Brockenborough v. Melton, 55 Texas, 506; Lindsay v. Jaffray, 55 Texas, 638; Texas & P. Ry. Co. v. Gay, 86 Texas, 593; Smith v. Woolfolk, 115 U. S. 143; Kleber's Void Jud. & Ex. Sales, sec. 145, p. 140; Butts v. Alderson, 14 S. W., 493.

There is no substantial difference between probate courts and bankruptcy courts in the matter of their procedure in disposing of real property. A sale made by either of such courts is a judicial sale, and the proceedings in each are proceedings in rem. Brown on Jurisdiction, secs. 58-69 inc.; Collier on Bankruptcy, 1907 ed., p. 607; In re Harvey, 122 Fed., 746; In re Shea, 11 Am. Bank Rep., 208; In re Fisher & Co., 135 Fed., 223; In re Rosenberg, 116 Fed., 402; Carroll Co. v. Young, 119 Fed., 576; In re Gerry, 112 Fed., 958; Chauncey v. Dyke Bros., 119 Fed., 1; Bankruptcy Act, 1898, sec. 70b; Bankruptcy Act, 1898, sec. 47, sub. A-2; 2 Remington on Bankruptcy, sec. 1950, p. 1215.

The South Texas National Bank, being a party to the bankruptcy proceedings, was charged with notice of the sale to the Grand Lodge

of Texas. In re Reynolds, 127 Fed. 760; Bridgens v. West, 80 S. W., 419; 29 "Cyc.," p. 1116; 23 "Cyc.," p. 1248.

PLEASANTS, CHIEF JUSTICE.—This is an action of trespass to try title brought by appellees, Cecil A. Lyon and J. S. Rice, receivers for the Kirby Lumber Company, against appellants, J. M. West Lumber Company and South Texas National Bank, to recover the Daniel Turney 640-acre survey of land in Polk County.

The appellant South Texas National Bank answered by general denial and plea of not guilty, and pleaded that it was an innocent purchaser, for valuable consideration, without notice of the title claimed by appellees and their grantors; and further, that the appellees' grantor, the Grand Lodge of Texas, was guilty of laches in withholding its deed from record, and that it was therefore estopped from claiming title to the property sued for.

Appellant J. M. West Lumber Company answered by general denial and plea of not guilty; and specially, that it purchased the land in controversy from appellant South Texas National Bank by warranty deed, and prayed judgment over against appellant South Texas National Bank, on its warranty, should the appellees recover the land from appellants.

The case was tried by the court without a jury, and judgment was rendered for appellees for the land sued for, and in favor of J. M. West Lumber Company against South Texas National Bank on its warranty for the sum of $2,180, with interest from date at six percent per annum. Both defendants have appealed from this judgment.

The trial court filed, at the request of appellants, the following conclusions of fact, which we find to be supported by the evidence:

"1. The origin of the case was in a deed of trust executed by Allen & Williams, and Allen & Co., and allied firms, of all of which Sam Allen was a member, given the Grand Lodge of Masons of Texas, April 1, 1895, to secure $10,000 borrowed from that body.

"2. In 1896 the same firms, becoming insolvent, or at least financially embarrassed, made a deed of trust to one Percy Allen for the protection of their creditors, who were numerous, and held in the aggregate claims to a large amount.

"3. An arrangement was made for a settlement with the creditors, the debts being largely scaled and divided into classes, and the Sam Allen Lumber Company was formed and took over the property and assumed the indebtedness, and on April 1, 1897, the trustee, Percy Allen, conveyed to the Lumber Company so formed all the assets which had been conveyed to him, retaining what is termed a 'vendor's lien,' and it seems a committee of the creditors was to supervise or look after the matter of handling the assets.

"4. It being deemed desirable to sell certain lands in Tyler County encumbered by the aforesaid deed of trust to the Grand Lodge of Masons, the creditors' committee gave permission, and the Grand Lodge consented on condition that other lands be substituted for those sold, and it was so arranged, and in March, 1898, a deed of trust to conform to said arrangement was given the Grand Lodge on two tracts of land in Polk County, one of which is involved in this suit.

"5. In June, 1900, the Sam Allen Lumber Company, being unable to throw off the burden of inherited financial embarrassment, was thrown into bankruptcy by its creditors.

"6. On August 25, 1900, the Grand Lodge of Masons asked for an order of the bankrupt court to sell all lands upon which it had deeds of trust to secure the $10,000. Notice of the application was duly given and the same was set for hearing before the referee in bankruptcy on September 12, 1900.

"7. On the latter date, no objection having been made, the sale was ordered for the first Tuesday in November, 1900, of the Tyler County lands at public sale in Tyler County, and the Polk County lands, including the tract in controversy, was ordered sold at private sale, both sales to be for cash.

"8. The sale was duly made and reported, and the sale to the Grand Lodge of all the lands, including that in controversy, was duly approved, and deed ordered made to the purchaser, the Grand Lodge, from which, by a regular chain of conveyances, the lands passed to the plaintiffs, who sued for one of the tracts in Polk County.

"9. On January 29, 1901, the South Texas National Bank and other creditors, payment of whose debts the Sam Allen Lumber Company had assumed, applied to the bankruptcy court for an order foreclosing the 'vendor's lien' retained by Percy Allen, trustee, when he conveyed to the Sam Allen Lumber Company.

"10. The court of bankruptcy made an order to the effect that the 'vendor's lien' was recognized and foreclosed, and it appearing that a sale of all the property covered by the lien had already been ordered for February 1, 1901, a sale of the property described in the application was ordered at the same time, and sale was made.

"11. Under the proceedings above cited the Grand Lodge got a deed from the trustee in bankruptcy in November, 1900, and the South Texas National Bank got a deed in February, 1901, under the sale made February 1, 1901.

"12. The Grand Lodge's deed was recorded in Polk County on February 23, 1901, while the bank's deed was recorded February 21, 1901.

"I find that at the time the South Texas National Bank purchased the land in controversy from the trustee in bankruptcy and received the deed therefor, that it paid the consideration recited in said deed without actual notice of the sale of said property to the Grand Lodge of Texas.

"I find that J. E. McAshan bid on and purchased the land in controversy for the South Texas National Bank, and that where the name of S. E. McAshan appears in the order of the bankruptcy court confirming the sale was a clerical error, and should have been J. E. McAshan, who was acting for the South Texas National Bank. I do not consider this a material matter—that is, one affecting the main issue."

Predicated upon these fact findings the learned trial judge reached the following conclusions of law:

"I do not attach any great importance to the so-called 'vendor's lien' retained by Percy Allen, trustee, because he had no better right than his grantors, the insolvent firms, had, and he took the property subject to the primary lien given in 1895 to the Grand Lodge to secure the debt of $10,000,

"I do not think the rights of the Grand Lodge were lessened or those of the defendants strengthened or increased by the substitution of the Polk County lands for some of the Tyler County lands, as that arrangement was equitable and fair, and its purpose obvious and rea-sonable.

"I do not think the question of notice by record of deed is essential to be considered in determining the case, nor the question of proving by parol that the sale under which the bank claims, though reported to have been made to J. E. McAshan and confirmed to S. E. McAshan, was in fact made to the former and that the former bought for the bank.

"I hold that when the property was sold on the first Tuesday in November to the Grand Lodge, the jurisdiction of the bankruptcy court over it was at an end, and that any subsequent sale was of no effect, and that the bank was bound to take notice of the proceedings of the court under the decrees of which it bought."

Appellants' first and second assignments of error complain of the first fact conclusion above set out, to the effect that the controversy had its origin in a deed of trust executed by Allen & Williams and others, on April 1, 1895, to secure the Grand Lodge of Masons of Texas in the payment of the note for $10,000, and of the introduction in evidence of said deed of trust over the objection of defendants that it was irrelevant to any issue in the case.

The third assignment complains of the third conclusion of fact as to the appointment of "a committee of the creditors to supervise or look after the matter of handling the assets" of the Sam Allen Lumber Company, and the fourth assignment complains of the fourth conclusion that said committee gave permission for the transfer of the lien of the Grand Lodge from lands in Tyler County to the land in controversy in this suit.

We agree with appellants that the several findings complained of in these assignments and the evidence objected to, were immaterial to the issues presented by the pleadings. The suit is only an action of trespass to try title. Neither plaintiffs nor defendants assert any right of redemption, and the only issue presented by the pleadings is one of title. Upon this issue the question of priority of the liens, under foreclosure of which the two sales of the land by the trustee in bankruptcy was made, is immaterial.

The conclusions of law complained of by the fifth and sixth assignments of error are also immaterial for the reason above given, that the question of priority of the lien in no way affects the question as to which of the parties to this suit holds the superior title to the land. It is apparent from the conclusions of law and fact as a whole that the immaterial conclusions of fact and law complained of by the assignments before mentioned did not form the basis of the court's judgment, and therefore the assignments present no error which would authorize a reversal of the judgment.

The seventh assignment is as follows: "The court erred in the fourth paragraph of his conclusion of law, which is as follows: 'I do not think the question of notice by record of deed is essential to be considered in determining the case; nor the question of proving by

parol that the sale under which the bank claims, though reported to have been made to J. E. McAshan and confirmed to S. E. McAshan was, in fact, made to the former, and that the former bought for the bank.' "

There is no merit in this assignment. While it is true that the lack of constructive notice which is given by the record of the deed under which the senior purchaser claims, is essential to protect the title of the junior purchaser who has purchased without actual notice of said prior deed, it is not true that the failure to record the senior deed before the junior purchase will, in all cases in which there is no actual notice to the junior, give him the superior title to the land, because the record of the deed is not the only way in which he may be charged with constructive notice of the prior sale. If the trial court is right in his conclusion of law that appellant South Texas National Bank was charged with constructive notice of the sale to the Grand Lodge by reason of the fact that it was a party to the proceedings in which such sale was made, it follows that the question of constructive notice by the record of appellees' deed is immaterial; and this is also true as to the question of whether the sale was to J. E. or S. E. McAshan and for the benefit of the appellant bank. In so far as the West Lumber Company is concerned the evidence does not raise the issue of innocent purchaser.

The eighth assignment of error presents the vital question in the case. This assignment is as follows:

"The court erred in the fifth paragraph of his conclusions of law, which is as follows: 'I hold that when the property was sold, on the first Tuesday in November, to the Grand Lodge, the jurisdiction of the bankruptcy court over it was at an end, and that any subsequent sale was of no effect, and that the bank was bound to take notice of the proceedings of the court under the decrees of which it bought.' "

Under this assignment appellants contend that under the bankrupt statute, in a sale of real estate belonging to the bankrupt estate, the title passes by the deed of the trustee and not by the order of the referee confirming the sale, and therefore the rule announced by Lindsay v. Jaffray, 55 Texas, 638, and other cases cited by appellees, that a second sale by order of the court in which an estate is being administered, of property of the estate which had been previously sold under a valid order of sale and the sale thereof confirmed, is void on the ground that the court exhausted its jurisdiction over the property by the first sale, has no application, and that the deed by the trustee in this case to appellant bank having been recorded prior to the record of the deed to the Grand Lodge, article 4640 of the Revised Statutes applies, and as to said appellant who purchased without actual notice of the deed to the Lodge such deed is void.

We do not think this contention is sound. Under the present bankrupt statute, section 70b, a sale by the trustee without the approval of the court seems to be recognized as valid provided the property is not sold for less than seventy-five percent of its appraised value, but there is no evidence in this case that the amount received by the trustee from appellant bank, as consideration for the sale of the property in controversy, was as much as seventy-five percent of the appraised value of

said property, and it does affirmatively appear that whatever may have been the power of the trustee to make the sale without the approval of the court he did not attempt to exercise that power, but the sale was made under an order of the court and was reported to and confirmed by the court. Such being the facts, we think the general rules governing judicial sales should apply to this sale, and the validity of the title thus acquired by the bank depends upon the validity of the order of court confirming such sale. If this conclusion is sound, it follows that the rule announced in the case cited is applicable, and the trial court did not err in the holding that the sale to the bank was void, because the bankruptcy court had exhausted its jurisdiction over the property by ordering and confirming the previous sale to the Lodge. (Withers v. Patterson, 27 Texas, 500; Brockenborough v. Melton, 55 Texas, 506; Lindsay v. Jaffray, 55 Texas, 638; Texas & Pac. Ry. Co. v. Gay, 86 Texas, 593.)

We also agree with the trial court in the conclusion that the bank having been a party to the bankruptcy proceedings in which the sale to the Lodge was ordered and confirmed, was charged with notice of such sale. The record shows that appellant bank had proved up its claim in the bankruptcy proceedings prior to the filing by the Lodge of the application for the sale of the land in controversy, and that notice of the hearing of said application was mailed to all of the creditors of said estate. Being a party to the proceedings and asserting therein a lien upon the property in controversy, we do not see upon what ground the bank can be held not chargeable with notice of the orders made in said proceedings concerning the disposition of the property. (Parish v. Alston, 65 Texas, 197; Bridgens v. West, 35 Texas Civ. App., 277.)

This doctrine of notice which charges all parties to a judicial proceeding with notice of the orders and judgments rendered therein, is entirely distinct from the doctrine of *lis pendens,* and therefore the case of Page v. Waring, 76 N. Y., 463, and other authorities cited by appellants, limiting and explaining the doctrine of *lis pendens,* do not support the contention that the appellant bank was not charged with notice of the order of the bankruptcy court confirming the sale to the Lodge.

Under the ninth assignment appellants assail the judgment on the ground that the lien under which the bank acquired title being a prior lien to that under which appellees' title was acquired, and the bank having purchased without knowledge of the prior sale to the Lodge, the judgment should have been in its favor. This contention is answered by what we have previously said. No claim was asserted by the bank under its vendor's lien, and there is no evidence in the record that it was the holder of the title of the vendor in the deed in which the vendor's lien was reserved.

The tenth and eleventh assignments of error have been disposed of by what we have before said in discussing the third and fourth assignments.

We are of the opinion that the judgment of the court below should be affirmed, and it has been so ordered.

*Affirmed.*

Writ of error refused.