MARY A. HINES, GUARDIAN, v. JOSIAH D. PERRY.

In order to charge a party with notice of the fact that the vendor was not the owner of, but held the slave purchased from him in trust for others, it is not essential that the information conveyed to such party, and relied upon as constituting such notice, should point out the records or persons from whom the title to the negro could be ascertained. Such a rule is more stringent than is warranted by the general course of decision on the subject of notice.

On the subject of notice so much must depend upon the peculiar circumstances of each case, and upon the evidences of good or bad faith on the part of the purchaser, that it is impossible to frame any general rule, or to prescribe a rule and its exceptions, to relieve the subject of its embarrassments.

The most that can be done in our practice is to refer the question of notice, where it resolves itself into matter of fact, to the jury, with such general instructions as can be made most applicable to the particular case.

A fact, relied upon as evidence of notice, is not inadmissible because the same was communicated to the party to be affected by it, by a slave.

APPEAL from Harrison. Tried below before the Hon. C. A. Frazer.

Mary A. Hines, as guardian of the persons and estates of her minor children, Sarah L. Hines, James Hines, Robert Hines, Andrew Hines, Jesse Hines and Mary Hines, brought suit against the appellee for a negro man, a slave named Allen; alleging the ownership of said children to have been derived by a deed of conveyance, made in the State of Mississippi on the 11th day of October, 1849, from James Hines to Sherrod Hines, conveying said slave, together with others, to said Sherrod in trust for said minor children. Acceptance of the trust, and delivery of possession of the property to said Sherrod was alleged, and also that he subsequently sold said slave to said Josiah D. Perry.

The defendant demurred, pleaded a general denial, and that he purchased the negro for a valuable consideration, to wit: one thousand dollars, without notice of the adverse claim of the plaintiff, or any other person.

The amended petition of plaintiff specially traversed the denial of notice of plaintiff's title, and charged the purchase to have been made with due notice thereof.

On the trial the deed of trust, date above specified, was introduced, and it was proven that the deed of trust, with the negroes conveyed thereby, were delivered in Texas to said Sherrod by one Pierce Fulgham, one of the subscribing witnesses to the deed, who brought them from Mississippi during the spring of the year 1850.

In the spring of the year 1855 Sherrod Hines sold to the defendant the slave in controversy, for the sum of one thousand dollars, which was then paid in gold.

The following declarations of the defendant were proved concerning his notice of the title of petitioners: When Sherrod Hines came to defendant's house, he brought with him the negro

Hines v. Perry.

man, and proposed to sell him to him; before defendant closed the trade he took the negro aside and asked him privately whether or not he really did belong to Hines? To which question the negro answered him in substance as follows: "I don't know, master, but I have heard the white folks say that I belong to his children." The defendant then communicated to Sherrod Hines what the negro had said, and Hines flew into a rage, and "swore he had as good a title to the negroes as any man in the world." The defendant's further statement was, that Hines appeared so earnest in what he said about the negro, that he concluded to buy him; did so, and paid for him. The deed had never been registered. The minor children are the children of Sherrod Hines, and the grandchildren of James Hines. Sherrod Hines died in August, 1855, and suit was filed Nov. 12th, 1855.

The court charged the jury that notice to the defendant that Sherrod Hines held said negro in trust for his children, if such was the fact, is such information as was sufficient to induce a reasonable man to enquire into the truth of the fact, coupled with such information of persons or records as would enable the defendant to find out whether the fact was true or false. If the defendant had this information, you will find that he had notice; otherwise, you will find that he had no notice.

On points submitted by the jury, the court gave the following charge:

"You have nothing to do with the validity or invalidity of the deed. The information necessary to constitute notice must point out the records or persons from whom the title to the negro could be ascertained, or it will not be sufficient to constitute notice."

The charge of the court was framed so as to require the finding of a special verdict on the several facts essential to be determined in the case.

It was proved by one witness, that at the time of the sale to the defendant the negro was worth twelve hundred dollars; by another that he was worth fifteen hundred dollars. Two of defendant's sons testified that he was worth one thousand dollars.

The jury found that the defendant "had not sufficient notice to enable him to find whether the facts were true or false in regard

to the title of the negro." And that the deed had not been recorded in any office, county or State.

Judgment of the court was thereupon rendered in favor of the defendant.

The appellant assigned many grounds of error, but the main question discussed in the opinion, renders it unnecessary to specify further than the alleged error in the charge of the court.

*G. Lane* and *W. R. Poag*, for appellant.—The conveyance was made in reference to the laws of Texas. A part of the children who were the beneficiaries, were in Texas, and the other children came with the property. The property was to be held in Texas. The deed and property were delivered in Texas. The deed was ineffectual till delivered. It is presumed the conveyance will be viewed in all respects as if James Hines had come to Texas with the negroes, made the deed, and delivered it and the negroes to Sherrod Hines.

The special verdict finds every fact charged in the petition for the plaintiff, except the notice on the part of Perry, which is not necessary for a recovery by the plaintiff.

According to our laws, the person who has the beneficial interest, "the use and sole benefit," is the true owner. Powers may be given in a deed of trust, authorising a sale by the trustee, to invest the proceeds, &c., as in the case of Gamble v. Dabney, 20 Texas, 69, where no doubt an improvident sale by the trustee would be supported. But where the trustee has but what is called the bare legal title; where there could have been no object in appointing him; where he was to do nothing, and had nothing in the property; where the deed might have been as well made to the children, and all the objects of the deed attained, as in the case of Manly v. Culver, 20 Texas, 143, any sale by the trustee only conveys such interest as he had, and which by our law is nothing.

An action of ejectment is supported on an equitable title; 8 Texas. The trustee has no more title than mortgage; 12 Texas, 43, Wright v. Henderson. Property not liable for debts of trustee; Parker v. Portis, 14 Texas, 169.

The courts of common law absolutely ignored a trust, however

sacred.   Courts of chancery have been striving for years to raise it to its true position.

. In 1732, it was questioned whether the vendee of a trustee, with notice of the trust, should hold subject to the trust; that it was no breach of trust thus to sell; that there was no precedent. The Chancellor replied, he would make a precedent: 1st. P. Williams, 129, Pye v. George.   The true manner of getting at the question, will not be in tracing the history of it through murky and conflicting authorities, but to determine from our own established principles of law, what interest Sherrod Hines had, and whether he sold more than he had to Perry.

Our system is without any "distinction between law and equity." Those systems are blended, out of which a third (our own) has grown—one of the principles of which is, that the person having the use and sole benefit, is the real owner.   I venture to say there is not a case decided in Texas, where a sale by a naked trustee has been supported.   Why should there be?   The purchaser says the trustee had the naked title.   If he had, the purchaser gets no more, for he cannot claim through one part of the instrument without taking the whole of it.   He says he was also in possession, but if the purchaser claims on the possession, that must yield to the true owner.   (Manly v. Culver, referred to 20, Texas.)

The cases are numerous in our reports, where conveyances have been made of property coupled with a parol trust.   A conveyance by the trustee under such circumstances for a valuable consideration without notice of the trust by the purchaser, he would obtain a good title.   (17 Texas, 143, Boon v. Wethered.)   But there is no earthly reason in allowing the purchaser to show that his vendor was a trustee, when the same instrument shows he has no interest in the property, and no power to sell.   It is therefore submitted to the court, that the children of Sherrod Hines were, according to the laws of Texas, the true owners of the negro Allen, and that the judgment of the court below should have been for the plaintiff, which this court is asked to render on the special verdict, and sending the case back for an enquiry as to the amount of hire, which the jury failed to find.

The court below should have granted a new trial.   The jury

found that Perry had no notice, when he had. As the sale of the negro was going on, and before it was completed, Perry took the negro out and asked him if he belonged to Hines. The negro replied, "I don't know, master, but the white folks say I belong to his children."

Perry must have been a stranger to Hines, or he would not have asked the negro about the title. He knew the possession of Hines would be obliged to yield to the true owner; that he would only purchase the right Hines had. The negro told him, and told him truly. What is the meaning of the language "the white folks say?" Who are the white folks to whom Perry is directed for information? The language certainly points to the white family of Hines, and those immediately in the neighborhood. That is the point to which Perry is directed, and where he could get the information. Perry was not satisfied that Hines was the owner of the negro. He asked the negro to clear those doubts; instead of the doubts being cleared, they are confirmed, for the negro tells Perry in effect, that he did not belong to Hines, but to Hines' children; and also tells him of the persons, and where to be found, who can tell him.

The negro told Perry enough to put him on the enquiry to the negro, who are the white folks? Ans. The white family of Hines and those immediately in the neighborhood. Where does Hines live? Ans. A few miles west of Grand Bluff in Panola county. The notice that Perry gets is not like the case in Sugden Vendors, (head, Notice,) where one about to purchase an estate is told by B. to beware how he purchases, as the vendor held in trust for C., while another tells him at the same time the vendor has a full and clear title. The person of whom Perry enquires, and who is likely to know, (the negro) confirms his doubts of Hines being the owner. If then he purchased under this load of information, that the children of Hines were the owners, humanity and justice require that he should restore to them the property.

The eighth charge of the court on the subject of notice, does not give the true rule on the subject, while the additional charge given on questions submitted to the jury, while they had the case under consideration, is more exceptionable.

The true rule is, that if such circumstances came to the know-

ledge of the defendant relative to the title of the plaintiff, as would induce an inquiry on the part of a prudent man, then the defendant had notice. The circumstances are so numerous, that an attempt to define them would lead the jury astray. Hines, a young man with five young children, selling a hale strong negro in the spring of the year, is a circumstance leading to an enquiry, why it should be done? The sale of the negro for less than his value, would be another circumstance; light it may be, but when all taken together, irresistible. The judge charged that the conversation must point "to persons or records;" if the conversation or circumstances pointed to where persons or records could be found, it was the duty of the defendant to make the enquiry. He could have found out from the negro, who those persons were, and where they were to be found. The fact that Perry asked the negro about the title, is a circumstance which should not be withdrawn from the consideration of the jury. This fact is pregnant of the fact that Perry had obtained from Hines, or from some other source, that Hines was not the owner. The weight to be given to such fact is the peculiar province of a jury, but under the instructions could not be considered. Our system of law should inculcate moral rectitude. We are happily an agricultural people. Sharp practices, and getting from doubtful owners good bargains, should not be countenanced.

The charges asked by the plaintiff and refused by the court, viz: "that if circumstances came to the knowledge of the defendant which would have put a reasonable man on the enquiry," should have been given.

*P. Murrah*, for the appellee.—The plaintiff's counsel conceded, in conducting the case, that if Perry bought and paid for the negro without notice of their claim, that he was an innocent purchaser and entitled to the negro. This was a concession forced from them by the law, for the law is, "if the trustee convey the legal estate to a purchaser for a valuable consideration without notice of the trust, the title of the purchaser will be good both at law and in equity, for he has equal equity with the *cestui que trust*, and the legal estate which was vested in him by the convey-

29Y

ance from the trustee, of course will prevail at law." (Hill on Trustees, 282 page, at top, 415–16; Passat v. Gibson, 7 Ga. R., 534.) In which decision Lumpkins, justice, held this language: " I hold the law to be clear that while the power of the trustee over the legal estate, or property vested in him, properly speaking, exists only for the benefit of the *cestui que trust;* yet, as the legal owner, he may do many acts to the prejudice of the *cestui que trust;* and, among the rest, he may even dispose of the property so as to bar the interest of the *cestui que trust* therein, as by a sale to a *bona fide* purchaser for a valuable consideration without notice of the trust." (Fonblanque's Equity, 412, and note *a*, and authorities there referred to; Jones v. Bemaid, 2 Dessaus., 564; see Millard's case, 2 Freeman, 43.) In the case of Rutledge v. Smith, (1 McCord's Ch. Rep., 132,) the court held: " No principle of equity is better settled than that a trustee cannot dispose of the trust estate to the prejudice of the *cestui que trust*, unless it be to a *bona fide* purchaser for a valuable consideration, having no knowledge of the trust." (Lewin on Trustees and Trust, 726; see same on uses and trusts, vol. 1, 349.) If the proposition asserted be law, we may pass to the question of notice. Was the charge of the court in regard to notice erroneous? Was the finding of the jury on the question of notice contrary to the law and the facts? I answer both questions in the negative. To constitute a binding notice, it must be given by a person interested in the property, and in the course of the treaty for the purchase. (Sugden on Vendors, 2 vol., page 537.)

Vague reports from persons not interested in the property will not affect the purchaser's conscience. If such reports were admitted as notice, then the inheritance of every man might easily be slandered. (Hill on Trustees, 510 page, at the top; 1 Story's Equity, 387, 400; Spence's Equity Jurisdiction, see page 753–4.) In the case of Jones v. Smith, 1 Hare Rep., 43, a man came to the purchaser of a house and told him to take heed how he bought it, for the vendor had nothing in it, but held it in trust for A. *Held,* not to have been notice, although this proves to be correct. " Notice of a mere general claim, and telling the intended purchaser that he would purchase it at his risk,

is not sufficient to affect him with notice." (3 Vesey, 286.) The absence of titled deeds is not sufficient to put him upon inquiry. (Plumb v. Flint, 2 Anstr., 432.)

Tested by these rules, the notice was not sufficient to put Perry upon inquiry, much less to give him any certain information. It was not sufficient under the loosest idea of notice; it came from no person who knew, or could know; it pointed to no person who knew—to no source of information; it defined no estate; it is weaker even than vague rumor. The vendor had the negro in his possession, and carried with him this evidence of ownership, in addition to being clothed with the legal title. A negro cannot be looked to for information; he is, in trade, property, not a man to speak and give evidence, or convey information. His representations as to tales, though false, would not be slander.

*N. H. Wilson*, also for the appellee.

BELL, J.—We are of opinion that there is error in the charge of the court to the jury, for which the judgment must be reversed. The main question in the case is, whether or not the appellee, at the time he purchased the negro man in controversy from Sherrod Hines, had notice that Hines held the negro in trust for his children. Our registration act, which was in force at the time of the sale by Hines to Perry, provides that " all deeds of trust and mortgages whatsoever, which shall hereafter be made and executed, shall be void as to all creditors and subsequent purchasers for valuable consideration without notice, unless they shall be acknowledged or proved, and lodged with the clerk, to be recorded according to the provisions of this act; but the same, as between the parties and their heirs, and as to all subsequent purchasers, with notice thereof, or without valuable consideration, shall, nevertheless, be valid and binding." The deed of trust under which Sherrod Hines held the slave in controversy, had never been recorded or lodged with the clerk for record; but the plaintiff, in the court below, attempted to show that Perry purchased the negro under such circumstances that the law will hold him affected with notice of the trust in favor of the children of his vendor.

In the brief of the counsel for the appellee, it is contended that there is no evidence tending to show that the appellee had any notice whatever of the trust, or knowledge of any fact which could put him on inquiry; and it is said that the negro himself could not convey any information to the purchaser of which the law will take notice. We cannot admit the soundness of this proposition. The law does not treat a slave as property merely, and incapable of doing any act which will affect others. The law recognizes a slave as competent to act as the agent of his master, and to bind his master by his act done as his agent. The law also recognizes slaves as competent witnesses against each other, and will acquit of crime, or punish upon their testimony. A court of equity, therefore, in inquiring into a question of notice, could not treat as amounting to nothing a clear and unambiguous notice of a fact communicated by a slave. We do not propose to express any opinion upon the sufficiency of the notice which is shown in the case; but we think it was such as was entitled to be considered by the jury under proper instructions from the court.

The subject of notice, in cases like the present, is one which abounds in difficulties in the practical administration of the law. So much must necessarily depend upon the peculiar circumstances of each case, and upon the evidences of good or bad faith on the part of the purchaser, that it is impossible to frame any general rule, or so to prescribe a rule and its exceptions, as to relieve the subject of its embarrassment. Judge Story has well remarked that the question of notice resolves itself sometimes into matter of fact, and sometimes into matter of law. (1 Story's Com. on Eq. Jurisp., § 399.) " It is a well established principle," says Spence, (2d volume of his Eq. Jurisp., 756,) " that whatever is notice enough to excite attention and put the party on his guard, and call for inquiry, is also notice of everything to which it is afterwards found that such inquiry might have led, although all was unknown for want of the investigation." A party will sometimes be charged with notice because of negligence in not making proper inquiry; and Mr. Spence defines negligence to be, in the legal sense of the term, " a disregard of some fact known to a purchaser, which at least indicated the existence of that fact, notice of which

the court imputes to a purchaser." These general rules indicate the principles upon which courts proceed in their inquiries on the subject of notice. They may furnish an easy solution of the question of notice in some cases, but in others they will aid but little, because, as Judge Story has said, " there will be found almost infinite gradations of presumption between vague and indeterminate rumor or suspicion, and that certainty as to facts, which no mind could hesitate to pronounce enough to call for further inquiry, and to put the party upon his diligence."

The most that can be done in our practice, is to refer the question of notice, where it resolves itself into matter of fact, to the jury, with such general instructions as can be made most applicable to the particular case. In the case before us, the jury seem to have returned into court, after their first retirement, and asked further instructions, and the judge then told them that " the information necessary to constitute notice, must point out the records or persons from whom the title to the negro could be ascertained, or it will not be sufficient to constitute notice." We think this rule is more stringent than is warranted by the general course of decision on the subject of notice.

There appears to have been some controversy in the court below about the execution of the trust deed, but the statement of facts says that the execution of the deed was proved, and a copy of the deed is given. There also appears in the transcript, as a part of the statement of facts, the answers of Hiram Hines to interrogatories propounded to him as a subscribing witness to the trust deed, when in fact he was not a subscribing witness.

The judgment is reversed and the cause remanded.

Reversed and remanded.