SKOV et al. v. COFFIN.†

(Court of Civil Appeals of Texas. San Antonio. Feb. 15, 1911. On Motion for Rehearing, May 17, 1911.)

1. TRUSTS (§ 200*)—RECITALS IN DEED—PARTIES AFFECTED.

In trespass to try title, recitals in a deed executed by a trustee as to the existence of the deed of trust and the power of sale conferred therein on the trustee are insufficient to prove the power of the trustee to execute the deed as against persons who were not privies to the deed of trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 267–269; Dec. Dig. § 200.*]

2. EVIDENCE (§ 54*)—RECITALS IN DEED—PRESUMPTIONS—DIRECT EVIDENCE.

Where plaintiff in trespass to try title had never been in possession of the land in controversy, a recital in a deed in his chain of title, executed by a trustee in 1893, that the deed was executed in pursuance of a power conferred on the trustee in a deed of trust, will not warrant the presumption that the trustee had power to execute the deed, where there was nothing in the evidence to indicate that the deed of trust had been lost, or that it was not easily accessible to plaintiff.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 74; Dec. Dig. § 54.*]

3. EVIDENCE (§ 54*)— PRESUMPTIONS — BASIS OF DIRECT PROOF.

Presumptions must be based on some necessity, and the court will not go into the domain of presumptions where direct proof can be obtained.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 74; Dec. Dig. § 54.*]

4. TRESPASS TO TRY TITLE (§ 38*)—BURDEN OF PROOF.

In trespass to try title, the burden is upon plaintiff to establish his title.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 53; Dec. Dig. § 38.*]

5. ESTOPPEL (§ 26*)—BY DEED—RECITALS.

Recitals in a deed executed by a trustee that it was in pursuance of a deed of trust conferring power on the trustee were not binding on persons who were not privies to the deed of trust.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 61, 62; Dec. Dig. § 26.*]

6. TRESPASS TO TRY TITLE (§ 6*)—BURDEN OF PROOF.

In trespass to try title, plaintiff must recover on the strength of his own title.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 5–9; Dec. Dig. § 6.*]

7. APPEAL AND ERROR (§ 209*)—OBJECTIONS IN LOWER COURT—FAILURE TO INTRODUCE EVIDENCE.

Since in trespass to try title plaintiff has the burden of proving his title, he is not entitled to recover on a defective title merely because defendant failed to object in the trial court to the defect in his proof of title.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1290–1300; Dec. Dig. § 209.*]

8. TRESPASS TO TRY TITLE (§ 40*)—DOCUMENTARY EVIDENCE — MATTERS SHOWN BY ABSTRACT OF TITLE.

Under Rev. St. 1895, art. 5263, providing that, in trespass to try title, documentary evidence shall be confined to the matters shown by the abstract of title, plaintiff could not introduce in evidence a deed of trust not set out in his abstract of title, though he introduced a deed by the trustee, shown by the abstract, reciting that the deed was executed in pursuance of a power contained in the deed of trust.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 55–61; Dec. Dig. § 40.*]

9. EVIDENCE (§ 372*)—ANCIENT DOCUMENTS—PRESUMPTION.

After the lapse of more than 50 years, it will be presumed that a justice of the peace executing a deed on behalf of the town of Socorro to land owned by the town had power to sell and grant such land; the deed containing a recital of such authority.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1613–1627; Dec. Dig. § 372.*]

10. PUBLIC LANDS (§ 176*)—CONVEYANCE BY TOWN—CURATIVE ACT.

In 1857 a justice of the peace of the town of Socorro, on behalf of the town, executed a deed conveying land of the town to a resident thereof, and subsequent to such conveyance the Legislature of Texas relinquished to the people of the town a league of land including the land conveyed. 4 Gammill's Laws, p. 1007. In 1871 the Legislature constituted the justice of the peace the ex officio mayor of the town of Socorro, and provided for the granting of the land of the town to actual settlers on the land and citizens of Socorro. 6 Gammill's Laws, pp. 1314–1320. In 1889 the Legislature passed an act reciting the making of informal conveyances of lands by the town of Socorro, and declared such conveyances valid. Held, that the deed executed in 1857 was validated by the act of 1889, and title to the land was vested in the grantee named therein.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 571–575; Dec. Dig. § 176.*]

11. PUBLIC LANDS (§ 176*)—CONVEYANCE BY TOWN—SUBSEQUENT PURCHASERS.

In 1857 the town of Socorro conveyed land in the town to T., and such land was thereafter occupied by T. and his grantees, and the grant was recognized as valid by the town. In 1886 the town passed an ordinance authorizing the mayor of the town to make confirmatory conveyances to citizens of the town occupying lands therein, and who possessed the right to a title from the corporation. L. made application to the mayor and council of the town, in which he recited the title of T. and a conveyance by the sheriff of the county to L., and asked for a confirmatory conveyance, which was made to him accordingly; the deed reciting that it was made in pursuance of such ordinance. L. was not a citizen of Socorro, and had never occupied the land conveyed. Held, that purchasers from L. were charged with notice by the recitals in the mayor's deed of the extent of the power of the mayor to make such deed, and, if such power did not exist, they purchased at their peril as against one claiming title derived from T.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 571–575; Dec. Dig. § 176.*]

12. NOTICE (§ 6*)—CONSTRUCTIVE NOTICE.

Whatever is notice enough to excite attention and put the party on his guard, and call for inquiry, is also notice of everything to which it is afterwards found that such inquiry might have led, although all was unknown for want of the investigation.

[Ed. Note.—For other cases, see Notice, Cent. Dig. §§ 4–7; Dec. Dig. § 6.*]

13. TAXATION (§ 789*) — TAX DEED AS EVIDENCE—TITLE.

A void tax deed is admissible to show a common source.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1556–1569; Dec. Dig. § 789.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

**14. TRESPASS TO TRY TITLE (§ 11\*)—COMMON SOURCE—RIGHT TO ATTACK.**

Where plaintiff in trespass to try title shows that his claim of title and that of defendant is from a common source, he will not be permitted to attack the title of such common source.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 14; Dec. Dig. § 11.\*]

**15. EVIDENCE (§ 592\*)—USE OF EVIDENCE OF ADVERSE PARTY.**

Where, in trespass to try title, plaintiff based his right to recover on an invalid deed executed by the mayor of a town, and failed to introduce in evidence a tax deed previously executed to plaintiff's grantor by the sheriff of the county, the fact that defendant introduced such tax deed for the purpose of showing that plaintiff's and defendant's title was from a common source did not authorize plaintiff to use such tax deed as a part of his chain of title.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2429; Dec. Dig. § 592.\*]

**16. ESTOPPEL (§ 28\*)—RECITALS IN POWER OF ATTORNEY.**

Where the owner of land takes a power of attorney from a stranger to the title, recitals in such power of attorney as to the existence of a deed from the attorney to the principal in such power of attorney operate to estop such attorney and his heirs from asserting title to the land as against the principal.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 68; Dec. Dig. § 28.\*]

**17. FRAUDS, STATUTE OF (§ 106\*)—SUFFICIENCY OF MEMORANDUM.**

A writing recited that the person signing the same was a justice of the peace of the town of Socorro, and that in the year 1854, in the month of August, he had given possession to citizen T., a resident of the town, of a piece of land in a place called the "acequia dura," consisting of the measurements shown by an annexed survey, to hold in the right of a neighbor, as T. has the rights of citizenship, having done all the ditch work necessary, and that such land was given him with the consent and pleasure of the neighbors and citizens of the town in order that he may be warranted in the same, and there be no adverse claim, "as I have freely done this act," and that such resident shall be obligated to record this document in the office of the county that it may have greater force. The writing was signed, "L., Justice of the Peace." *Held*, that the writing was a sufficient memorandum to take the transaction out of the statute of frauds, and hence extrinsic evidence was admissible to disclose the position and condition of the parties at the time of the execution of the instrument.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 210–211; Dec. Dig. § 106.\*]

**18. APPEAL AND ERROR (§ 1052\*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.**

Where plaintiff in trespass to try title has failed to introduce evidence sufficient to establish a title on which he may recover, he cannot complain on appeal of error in the admission of evidence on behalf of defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4171–4177; Dec. Dig. § 1052.\*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by C. O. Coffin against W. P. Skov and others, and cross-action by defendants. From a judgment for plaintiff, defendants appeal. Reversed and rendered.

Z. L. Cobb and J. M. Nealon, for appellants. Patterson, Buckler & Woodson, for appellee.

FLY, J. This is an action of trespass to try title to 138 acres of land situated in the town of Socorro, El Paso county, Tex., instituted by appellee against W. P. Skov, S. C. Thomas, Zach Lamar Cobb, the Pennsylvania Company for Insurance on Lives and Granting Annuities, a corporation, Emilia A. Hough, Isaac Hough, Francis A. Thibault, and Carrow Thibault, Jr. The appellants, defendants below, answered by general demurrer, pleas of not guilty and limitations of three, five, and ten years, and further set up a cross-action against appellee, and prayed for judgment for the title and possession of the land in controversy. The court instructed the jury to return a verdict for appellee upon his petition for the land described therein, and also in favor of appellee as against appellants on their cross-action, which was accordingly done, and from the judgment rendered thereon this appeal has been perfected.

In response to a notice given by appellants, appellee filed his abstract of title, in which the land was claimed through mesne conveyances from a deed made by Juan Armendariz, mayor of the town of Socorro, to Moritz Lowenstein, dated November 27, 1886. The ordinance under which the deed was executed was also made a link in the chain. Another link in the title was a trustee's deed made by M. J. Dart, trustee for W. H. Lisles and L. J. Lisles, his wife, but the deed of trust on which it was based was not mentioned in the abstract of title, and no proof of it was offered on the trial.

Appellants claim from John J. Thibault, through a deed made to him in 1854 by Martin Lujan, justice of the peace, claiming to act for the people of Socorro, together with attached field notes made by S. Archer, surveyor. The next link in the chain of title was a power of attorney from Francis F. Thibault to John J. Thibault, authorizing him "to take care of and conduct and manage" certain property therein described, among the rest "the first tract of land known as survey No. 1, made by S. Archer, in the town of Socorro to John J. Thibault, and by him conveyed to said Francis F. Thibault, by deed bearing date the 22d day of September, 1858, which said tract or parcel of land is more particularly described in record book A, pages 608–9 of the county records of El Paso county, and containing 139 acres, 1045 varas, more or less." It was admitted by appellee that appellants had made due effort to find the deed mentioned in the said power of attorney, and the same could not be found. The will of Francis F. Thibault was introduced, in which it appeared that the corporation sued by appellee had been appointed ex-

ecutor and trustee of the will, with full power to grant, bargain, sell, mortgage, or partition the estate. Conveyances were shown by all the heirs and the executor to Zach Lamar Cobb to one-half of the land, and it was admitted by appellee that Emilia Hough was formerly the wife of Francis F. Thibault, and that she and the Thibaults, sued by appellants, were the only heirs of Francis J. Thibault. It was shown that Skov and S. C. Thomas had sold all their interest in the land to Zach Lamar Cobb. It was shown that appellants were in actual possession of the land. There was proof of action on the part of John J. Thibault under the power of attorney from Francis F. Thibault, evincing a ratification of the same.

[1] As hereinbefore indicated, appellee claims through a deed made by Dart, trustee for Lisles, to Watkins, and the deed of trust under which Dart purported to have acted was not introduced in evidence or its absence in any manner accounted for by appellee. The deed of trust is absolutely essential to perfect appellee's chain of title, and the power to execute the deed is not proved by the recitals in the deed as against those who were not privies to the deed of trust. Watkins v. Smith, 91 Tex. 589, 45 S. W. 560.

[2, 3] It is claimed by appellee, however, that the circumstances are such that a power to execute the deed which is dated in 1893 will be presumed. We fail to discover any such circumstances. Appellee has not been in possession of the land, and there is nothing to indicate that the deed of trust was lost or that it was not easily accessible to appellee. Presumptions must be based on some necessity, and, in the absence of such necessity, they will not be indulged. As said in the leading case of Watrous v. McGrew, 16 Tex. 506: "There would seem much reason to hold that the circumstances amount to prima facie evidence of the genuineness of the power under which the attorney acted in making the mesne conveyance, yet it must be admitted that the power under which the deed is executed should be proved, and its production and proof ought not to be dispensed with, unless under particular circumstances of apparent necessity; as, where from the lapse of time or other causes, there is reason to believe it to have been lost, or that it is not in the power of the party to produce it. If it be not in the power of the plaintiffs now to produce and prove the execution of the power of attorney in the ordinary mode, yet it can scarcely be doubted that by the use of proper diligence they might have obtained some evidence conducing to prove its genuineness." That the deed of trust was easily accessible to appellee is shown in the deed of Dart to J. B. Watkins, wherein it is recited that the deed of trust is recorded in a certain record book on a certain page. It is not pretended that proof of the deed of trust could not have been obtained, and a court will not go into the domain of presumptions, where direct proof can be obtained. No case can be found where presumption has been indulged as to an instrument having been executed, when there is no allegation of loss or destruction, and when the instrument can be proved by the production of the original, a certified copy, or even parol evidence. It may be said in this connection if the circumstances had been such as to demand indulging in presumption, it would have been a presumption of fact to be passed upon by a jury. Dailey v. Starr, 26 Tex. 562.

[4] The burden was upon appellee, as the plaintiff in the case, to establish his title, and it was not incumbent upon appellants to make objections that would cause appellee to supply the missing link in his chain of title.

[5] The recitals in the deed as to the power to execute the deed were not binding upon appellants, whether objected to or not. So far as appellants are concerned, the recitals were absolutely without any effect whatever. They were not privies to the deed, were in no manner connected with it, and were not bound by its recitals. So far as they are concerned, the recitals were not evidence at all. "The general rule in regard to recitals in deeds or other instruments is that they are evidence against the parties executing such deeds or instruments, and those who claim under them, but not in their favor. The admissibility of the recital depends upon the same principles as the admissibility of a declaration of the party executing the instrument. Such recitals, therefore, are in general no evidence against third persons who are strangers to the deed or instrument in which they occur." McKinnon v. Bliss, 21 N. Y. 206.

In the case of Brown v. Goodwin, 75 N. Y. 409, the only evidence of title given by the plaintiff was a deed executed by a United States collector of internal revenue, and the recitals therein and a conveyance from the purchaser to the plaintiff. The Court of Appeals of New York held: "The title, so far as shown, hangs upon a deed from the United States collector of internal revenue in and for the Twenty-Third collection district in the state of New York; and, to be more definite than that, it hangs upon this, whether the recitals in that deed are sufficient prima facie to make out a right in time to sell and convey. * * * We do not think it needful to examine any other grounds claimed by the respondents why the plaintiff cannot maintain her action. It is enough for this appeal that we hold that the recitals in the deed do not make the proof she needs to adduce. Nor is it needful to consider the points made by the appellant as to the inequitable character of the defendants' relation to these premises. Until the plaintiff

shows a right to the lands, she shows no right to question any other person's claim to it."

[6, 7] Plaintiff must recover on the strength of his title, and if there is a failure in his proof, it can be taken advantage of at any time during the pending of the suit. If the appellee failed to establish a title to the land, he cannot maintain a recovery on a defective title on the ground that appellants did not make objections in the trial court, which would have drawn his attention to the defects and enabled him to repair them. Appellants are not responsible for the broken links in appellee's title. The case is one of a failure of the proof to sustain the judgment and can be taken advantage of in the appellate court.

[8] Even if appellee had sought to introduce the deed of trust, he could not have done so, because it was not named in the abstract of title. Article 5263, Rev. St. 1895. Appellants claim title through a grant from the town of Socorro to John J. Thibault, which was made in 1854, and is as follows:

"The State of Texas, County of El Paso. I, citizen Martin Lujan, certify in all forms of authority as being Justice of the peace of this Town of Socorro in the year One Thousand Eight Hundred and fifty-four (1854) in the month of August I have given possession to citizen Juan Jose Thibault a resident of this Town, a piece of land in the place called the 'Acequia Dura,' which consists of the measurements shown by the above survey to hold in the right of a neighbor, as Mr. Thibault has the rights of citizenship, he having done all the 'fatigas' (ditch work) necessary. At the same time this land was given him with the consent and pleasure of the neighbors and citizens of this town of Socorro, in order that he may be warranted in same and there be no adverse claim, as I have freely done this act. And thus also this said resident is obligated to record this said document in the office of the County, that it may have greater force. Given in the town of Socorro, County and State aforesaid, and in witness whereof, I sign the same. Martin Lujan, Justice of the Peace.

"English note: Filed for registration this 22nd day of August, A. D. 1857, and duly recorded on the 24th day of the same month and year above mentioned."

In connection with the grant, evidence was introduced by appellants which showed that John J. Thibault had built houses and planted grapevines on the land, and had tenants living in the houses who planted grain and beans on the land for eight or ten years. It was shown that it was the custom for the lands of Socorro to be conveyed, with consent of the town, to those who desired it. Manuel E. Flores, who was district and county clerk of El Paso county for eight years, testified: "The custom by which the people of the town of Socorro partitioned its lands to individuals living in Socorro was that such individuals, inhabitants of the town of Socorro, applied to the 'alcalde' —that is, the justice of the peace—and the justice of the peace assigned the partition and deeded the land to the applicants after due and proper investigation of their claim. I am familiar with many titles in Socorro— hundreds of them; quite a number of them to my knowledge originated in this way. I am familiar with the Thibault title to survey No. 1, containing 139 acres, it being the land in dispute, and I am familiar with the fact that the people of the town of Socorro acquiesced in and approved the setting apart of this land to Thibault." Subsequent to the grant to John J. Thibault, the Legislature of Texas had relinquished to the people of the town of Socorro a league of land called "El Pueblo de Socorro," and the land in controversy is a part of that league. 4 Gammell's Laws, p. 1027. In 1871 the Legislature constituted the justice of the peace the ex officio mayor of the town of Socorro, and provided for the granting of the lands of the towns to actual settlers on the land and citizens of Socorro. 6 Gammill's Laws, pp. 1314–1320. On April, 1899, the Legislature passed the following law: "Whereas the state of Texas has granted to each of the towns of Socorro, Ysleta and San Elizario, of the county of El Paso, several leagues of land, and these lands have been conveyed by said towns to the inhabitants for the most part, and the deeds are generally informal, which much retards the settlement of said lands and depreciates the value thereof. Now, therefore, be it enacted by the Legislature of the state of Texas: That all genuine deeds made by the town of Socorro, Ysleta and San Elizario to lands lying in their respective corporate limits, whether the same be in form or attended with the formalities prescribed by the charters, are hereby declared valid and operative as fully as if all the forms and formalities required had been complied with." When the grant or conveyance was made by the people of Socorro, acting through the justice of the peace, to John J. Thibault, it was their land, and they had the authority to sell, and the evidence shows that the method adopted by them in conveying the land was through a justice of the peace. They had authority only to sell to actual settlers, and Thibault was in that category. The rights of other parties to the lands were especially protected by the act of confirmation of Socorro's title in 1858. In the act of 1871, here in cited, there was a recognition of the custom that prevailed in Socorro and other towns of having the justice of the peace to act as mayor by the provision that the officer mentioned should be ex officio mayor.

[9] It is recited in the instrument executed by the justice of the peace that the land

was granted "with the consent and pleasure of the neighbors and citizens of this town of Socorro, in order that he may be warranted in same and there may be no adverse claim, as I have freely done this act," and, if there had been no direct proof of the authority given the justice of the peace to act in the sale of lands, after the lapse of more than 50 years, the presumption will prevail that the power had been granted to the justice of the peace to sell the land. The conveyance was an ancient instrument, and the authority to execute it could properly be presumed. O'Donnell v. Johns, 76 Tex. 362, 13 S. W. 376.

[10] However, the conveyance of the land was undoubtedly validated by the act of 1889. 9 Gammell's Laws, p. 1371. The field notes, as well as a plat of the land granted to J. J. Thibault, were made in 1854, and were recorded. When the deed was made by the justice of the peace, Thibault immediately went into possession of the land, and made improvements thereon, and it was afterwards recognized by every one as his property. We are of the opinion that the legal title passed by the instrument to Thibault. Baker v. Westcott, 73 Tex. 129, 11 S. W. 157.

Appellee claims title to the land in controversy through a deed from Juan Armendariz, as mayor of the town of Socorro, to Moritz Lowenstein, dated November 27, 1886, conveying to him the land in controversy. The deed purported to be made in accordance with the provisions of an ordinance of the town providing for the surveying, adjusting, and defining of boundaries of private land grants within the limits of the town, "and to provide for the division and granting of said land," passed and approved on April 24, 1886. The scope of the ordinance is thus stated in section 1: "Be it ordained by the council of the town of Socorro that all the residents whose domicile is, and who live, within the boundaries or limits of the corporation of the town of Socorro, and who were domiciled or lived as bona fide citizens before the 1st day of April, 1886, and who have been in possession of the lands and who, at the same time are not in possession of good deeds, which may justify the legal right thereto, it is therefore ordered by this corporation that every citizen who may find himself under these circumstances, shall have the right to a title from this corporation, for every one of the lands occupied by him, under the following basis." The succeeding sections required applications for titles accompanied by plat and field notes, provided for notices of the applications, payment of fees, and for the signing of deeds by the mayor and secretary, and attestation by the seal of the town. The proof showed that Lowenstein never lived in Socorro before or after April 1, 1886, and was never in possession of the land in person or by tenant. It is apparent, therefore, that he did not come within the scope of the ordinance under the authority of which the deed was executed, and the only ground upon which a conveyance made to him could be based was a claim by Lowenstein from some one who came within the purview of the ordinance.

In that connection, appellants introduced the application of Lowenstein for a deed to the land, which, eliminating his card showing that he was merchant in Ysleta, was as follows: "Ysleta, El Paso County, Oct. 30th, 1886. To the Honorable Mayor and Council of the Corporation of Socorro, Socorro, Texas. Gentlemen: I have the honor to present before your honorable body a petition for a certain tract of land situated within the boundary of your corporation. Enclosed herewith I present before you a true certified copy, in accordance with law, of the original title of Martin Lujan, to Mr. Juan Jose Thibault; and at the same time the title from the Sheriff of this county to me. Please investigate the right that I claim, and, after doing so, have the kindness to issue me a title from your corporation for the purpose of securing my rights to the land forever. I remain, gentlemen, your most obedient servant, Moritz Lowenstein." That application was found by the secretary of the town of Socorro among the papers of that corporation. Upon that application, which fully recognized the title of John J. Thibault to the land, and the papers accompanying it, was based the title of Moritz Lowenstein, through whom appellee deraigns title. As appears from the ordinance, upon which the deed to Lowenstein is based, and without which there was no authority in the mayor to execute the deed, parties to whom it applied were those who lived or had lived on the land and who had deeds deemed to be imperfect in some particular, and Lowenstein did not live on the land and had never lived on it, and had no kind of deed, unless he had one from the sheriff of El Paso county, and upon the title of John J. Thibault his title must rest, because the deed to him was merely confirmatory of the deed made to Thibault. It follows that the common source of the titles of both appellants and appellee is John J. Thibault, and, if appellee has any title at all, it must rest on that of John J. Thibault.

[11] It is recited in the deed from the mayor of Socorro to Lowenstein that it was executed by virtue of a certain ordinance, describing it, which was passed and approved by the town council of Socorro on April 24, 1886, and that recital was sufficient to put those claiming through Lowenstein on inquiry as to the contents of that ordinance. It was read into and became as much a part of the deed as though it had been copied in full into it. The sale was made under a power that was set forth in the deed, and a purchaser under that power was charged with

notice if the power did not exist and purchased at his peril. Lindsay v. Jaffray, 55 Tex. 626; Griffith v. Morrison, 58 Tex. 46.

The reference to the ordinance was sufficient to excite inquiry and put any one claiming through Lowenstein upon notice that for him to be entitled to a deed he should file an application bringing him within the requirements of the ordinance, and that such application was on file with the secretary of Socorro, and was transcribed in a book kept for that purpose. Such inquiry would have led to the knowledge that Lowenstein claimed a right to the land through a sheriff's deed to him, and it could have been easily ascertained what was contained in that deed.

[12] It is the rule that whatever is notice enough to excite attention and put the party on his guard, and call for inquiry, is also notice of everything to which it is afterwards found that such inquiry might have led, although all was unknown for want of the investigation. Hines v. Perry, 25 Tex. 443; Traylor v. Townsend, 61 Tex. 144. The rule is thus stated in 4 Kent, 179, and quoted in Wethered v. Boon, 17 Tex. 143: "The general doctrine is that whatever puts a party upon an inquiry amounts, in judgment of law, to notice, provided the inquiry becomes a duty as in the case of purchasers and creditors, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding." Under the operation of that rule, we hold that appellee was charged with notice of what was contained in the application of Lowenstein for the deed from the town of Socorro.

The claim of Lowenstein to the Thibault land, without which he could not have obtained the validating deed, was based on a tax deed made by the tax collector, who was also the sheriff of El Paso county, which was dated August 17, 1883, and filed for record July 17, 1884, which described the land just as it was subsequently described in the deed from Socorro to Lowenstein. This deed was the only claim Lowenstein had on Thibault's land. That deed was introduced in evidence by appellants to show what deed was referred to in the application of Lowenstein and its record was notice to every one of the claim Lowenstein had on the Thibault land.

[13, 14] The tax deed was not only introduced by appellants to identify the instrument referred to by Lowenstein in his application, but also to show an admission of Thibault's title and consequently a common source of title. A void tax deed is admissible to show a common source. Garner v. Lasker, 71 Tex. 431, 9 S. W. 332; Burns v. Goff, 79 Tex. 236, 14 S. W. 1009. A common source being shown, appellee will not be permitted to attack the title of John J. Thibault.

[15] The introduction in evidence of the tax deed to show common source placed it in evidence for that purpose alone, and appellee cannot use it as a chain in his title, even if the deed had been a valid one. Article 5266, Rev. St.; Ogden v. Bosse, 86 Tex. 336, 24 S. W. 798. The tax deed was not placed in evidence by appellee.

[16] We are of the opinion that the recitals in the power of attorney from Francis F. Thibault to John J. Thibault of the existence of a deed to the land from the latter to the former would raise a presumption that the deed was made, and the acceptance of the power of attorney by John J. Thibault and his action thereunder would estop him or his heirs from claiming the land. As between John J. Thibault and his heirs and Francis F. Thibault, the title would be in the latter. The document executed by Lujan to Thibault was accompanied by a plat and field notes, the latter of which are referred to in the document executed by Lujan. It is true that the date of the document as stated therein is anterior to the date assigned to the making of the field notes, but the date in the deed doubtless refers to the time at which possession was given to Thibault, and not to the date when the instrument was executed. In the statement of facts it is recited that the paper denominated a memorandum is attached to the field notes, and in that memorandum they are referred to as "the measurements shown by the survey above."

[17] The memorandum in writing made by Lujan to Thibault is referred to herein as a deed; and while it is not in form a deed it is such a memorandum in writing, as to take the transaction out of the statute of frauds, and extrinsic evidence was permissible to disclose the position and condition of the parties at the time of execution of the instrument. The memorandum declares that possession had been given Thibault of certain land, describing it, which he was "to hold in the right of a neighbor, as Mr. Thibault had the rights of citizenship," giving the reason why. The next clause shows that the land was given to Thibault "with the consent and pleasure of the neighbors and citizens of this town of Socorro," and, further, "in order that he may be warranted in the same and there be no adverse claim" the officer had "freely done this act." It was clearly the intention of the maker of the document to convey the land to Thibault, and he went in possession of the land, held it for eight or ten years, improved it, and his title thereto was recognized by the people of Socorro, and by the sheriff of El Paso county, as well as by Lowenstein. His title was questioned by no one until this suit was instituted. It was recognized by the town of Socorro through the validating deed to Lowenstein, who obtained the validation by representing that he held Thibault's title.

[18] For the reasons herein given, the cross-assignments of error which complain of evidence introduced by appellants are overruled. Having failed to make out a case, it

would not profit appellee if all the evidence offered by appellants were stricken out.

The judgment is reversed and judgment is here rendered that appellee take nothing by his suit, and pay all costs of this and the lower court.

### On Motion for Rehearing.

We need not consider or discuss the authority and power of Martin Lujan, as representative of the people of Socorro to convey title to the land in controversy to John J. Thibault, for, if that title was invalid, appellee failed to make out his case. He was the plaintiff in the court below, and the burden was on him to establish his title. That title must rest on the title obtained by Moritz Lowenstein from the tax sale of the land as the property of John J. Thibault. If the latter had no title, there was no title in Lowenstein. The grant made by the mayor of Socorro in 1886 to Lowenstein was dependent on the title obtained by Lowenstein from John J. Thibault, and it was utterly invalid if there had been no prior title granted to Thibault. This theory has been fully developed in our former opinion. The motion for rehearing is overruled.