Thomas Dunn MacMILLAN, Appellant,

v.

Daniel F. CALLAHAN et al., Appellees.

No. 5025.

Court of Civil Appeals of Texas, Eastland.

Aug. 18, 1977.

Joanne H. Strauss, Robinson, Hanna, Chappell, Burke & Moore, Inc., Abilene, for appellant.

C. G. Whitten and Billy John Edwards, Whitten, Sprain, Price, Wagner & Edwards, Abilene, for appellees.

McCLOUD, Chief Justice.

At issue is the ownership of an undivided 595/1500 royalty interest.

The questions to be discussed involve the inception of title doctrine and the effect of an unprobated will.

Plaintiffs, Daniel F. Callahan, Eugene H. Callahan, Laurance David Jones, and Esther Marilyn Robinson, sued defendants, Thomas Dunn MacMillan, L. S. Kent and his unknown heirs, and the unknown heirs of Esther Dunn Callahan, deceased, seeking judgment quieting title and a declaration that they owned a 595/1500 royalty interest in the following described land in Stephens County, Texas:

The West 60 acres of the Southwest Quarter of Section 18, Lunatic Asylum Lands;

The West 60 acres of the Northwest Quarter of Section 25, Lunatic Asylum Lands;

80 acres being the South Half of the Southeast Quarter of Section 17, Lunatic Asylum Lands.

Plaintiffs alleged that oil and other hydrocarbons have been produced from the described land since 1957, but the purchaser of the production has refused to pay plaintiffs the proceeds from such production because of the claim of defendants.

Attorneys ad litem were appointed to represent the unknown heirs of Esther Dunn Callahan, deceased, and L. S. Kent and his heirs. Thomas Dunn MacMillan appeared and participated in the trial.

Following a nonjury trial, judgment was entered, based upon an agreement between the individual plaintiffs as to their respective ownership, that the royalty interest in question is owned as follows:

(a) Plaintiff, Daniel F. Callahan, ⅓ of 595/1500 royalty interest;

(b) Plaintiff, Eugene H. Callahan, ⅓ of 595/1500 royalty interest;

(c) Plaintiff, Laurance David Jones, ⅙ of 595/1500 royalty interest; and,

(d) Plaintiff, Esther Marilyn Robinson, ⅙ of 595/1500 royalty interest.

The court found that defendants had no right, title or interest in the 595/1500 royal-

ty interest in question. The court expressly found that such royalty interest was acquired by Dan F. Callahan, deceased, when he was a single man and became his separate property. Thomas Dunn MacMillan has appealed. We affirm in part, reverse and render in part, and reverse and remand in part.

Appellant, MacMillan, contends the 595/1500 royalty interest in issue was the community property of Dan F. Callahan and wife, Esther Dunn Callahan, both deceased, and he is the owner of an undivided ½ of the royalty interest in question because he is the sole heir of Esther Dunn Callahan.

On June 30, 1909, Dan F. Callahan married Ora Haile. Appellees, Daniel F. Callahan and Eugene H. Callahan, were born of the marriage as was Katherine C. Jones, deceased, mother of appellees, Laurance David Jones and Esther Marilyn Robinson. Ora Haile Callahan died on October 20, 1918. Dan F. Callahan then married Esther Dunn on June 9, 1920. No children were born or adopted to the marriage of Dan F. Callahan and Esther Dunn Callahan. Dan F. Callahan died intestate on July 13, 1939, leaving as his survivors his widow, Esther Dunn Callahan, and his three children Daniel F. Callahan, Eugene H. Callahan and Katherine C. Jones. Esther Dunn Callahan died on June 1, 1973, in the state of Louisiana. Appellees assert she died testate, while appellant contends we have no "jurisdiction" to consider her unprobated will. The appellant, Thomas Dunn MacMillan, is the nephew of Esther Dunn Callahan and her only surviving blood relative.

On May 4, 1920, at a time when Dan F. Callahan was a single person, he entered into an agreement with L. S. Kent which provides in part as follows:

"This Agreement, made this 4th day of May A.D. 1920, by and between L. S. Kent, party of the first part, and Dan F. Callahan, party of the second part, Witnesseth:

First: For valuable consideration said first party hereby transfers to said second party the undivided one-half interest in and to a certain contract between said first party herein and O. Curry and Allie Curry, his wife, for all the units representing one-half of the royalty of one-eighth of oil and gas upon the following described lands, to-wit:

(1) The west sixty (60) acres of the Southwest Quarter of Section eighteen (18), Lunatic Asylum Lands;

(2) The west sixty (60) acres of the Northwest Quarter of Section twenty-five (25), Lunatic Asylum Lands;

(3) Eighty (80) acres, being the South Half of the Southeast Quarter of Section seventeen (17), Lunatic Asylum Lands;

All of the above described land being situated in Stephens County, Texas said first party accepts (sic) herefrom the units previously sold by him amounting to the aggregate sum of about Ten Thousand ($10,000.00) Dollars.

Second: All profits arising hereafter from or through the said contract between the said first party and said Curry shall be equally divided between the parties hereto and as the same are made.

Third: Said royalties are divided into seven hundred and fifty equal parts or units at the par value of One Hundred ($100.00) Dollars per unit. All sales hereinafter made by either party shall be divided equally and each party will use their endeavors to bring about sales of a sufficient amount of units to liquidate the amount of contract due said Curry, and as the same are sold reports will be made to each other as to the sales, and an accounting and settlement made accordingly.

After said Curry is paid in full, as per his contract, it is hereby understood and agreed that all remaining units unsold or money received from unsold units in excess of this amount shall be divided equally between both parties.

A copy of said contract between said Kent and said Curry is to be attached hereto as Exhibit 'A' and a copy of contract with C. E. Martin and L. S. Kent shall also be attached and made a part of this and will be known as Exhibit 'B'."

The exhibits referred to in the contract were not attached to the contract, are not of record in Stephens County, and were not introduced in evidence.

On August 16, 1920, after Dan F. Callahan had married Esther Dunn, O. Curry and wife, Allie Curry, sold to Dan F. Callahan by an instrument termed a "Certificate" an undivided royalty interest in the tracts of land covered in the agreement between Callahan and Kent. The instrument provides in part:

"CERTIFICATE
OF
SQUARE DEAL ROYALTY
O. CURRY NO. I

This royalty consists of one sixteenths of all oil saved and delivered free of cost at the well, or into pipe line, and the usual gas and mineral terms on the following described lands, all in Stephens County, Texas.

1st. The west 60 acres of the S.W.¼ of Sec. 18, Lunatic Asylum Lands,

2nd. The West 60 acres of the N.W.¼ of Sec. 25, Lunatic Asylum Lands,

3rd. 80 acres being the S½ of the S.E. ¼ of Sec. 17, Lunatic Asylum Lands. This royalty is divided into 750 equal parts, or units, at the par value of $100.00 per unit.

Therefore, on this 16th day of August, 1920 for and in consideration of the sum of $35700.00 I have sold to Dan F. Callahan, Wichita Kansas, Five Hundred Ninety five (595) equal parts or units in the above described royalty.

The undersigned O. Curry being the owner in fee of above described lands, and having perfect title to same, therefore has a perfect legal right to sell any part or interest, and will defend this title to said Dan F. Callahan his assigns or heirs, forever."

Both appellees and appellant contend and agree that Dan F. Callahan received an undivided 595/1500 royalty interest under the instrument.

Appellees argue the trial court correctly held that the royalty interest was the separate property of Dan F. Callahan because his title had its inception in the agreement entered into between Kent and Callahan when Dan F. Callahan was a single man. We disagree.

Appellees rely upon the general rule announced in O. SPEER, MARITAL RIGHTS IN TEXAS § 380 (3rd ed. 1929), which states:

"The status of property acquired during the marriage is determined by the inception of the title. More accurately speaking, the property is acquired when the title had its inception.

This is true because when the title has its inception, a right accrues and this right is property and gives character to its status. Equities may of course arise, but this is another consideration.

When the right to the property originates before the marriage or after its dissolution, it is not community."

See also: *Welder v. Lambert*, 91 Tex. 510, 44 S.W. 281 (1898); *Creamer v. Briscoe*, 141 Tex. 490, 109 S.W. 911 (1908); *Evans v. Ingram*, 288 S.W. 494 (Tex.Civ.App.-Waco 1926, no writ); *MacRae v. MacRae*, 144 S.W.2d 320 (Tex.Civ.App.-El Paso 1940, writ ref'd); *Allen v. Beard*, 165 S.W.2d 913 (Tex. Civ.App.-Texarkana 1942, no writ).

The rule urged by appellees is not applicable. The only evidence touching the inception of title issue is the contract and deed copied above. The deed from O. Curry and wife, conveyed an undivided 595/1500 royalty interest to Dan F. Callahan. Under the agreement between Callahan and Kent, Callahan was to receive something less than ½ of 750/1500 royalty interest. The agreement expressly states that Kent except "units previously sold by him amounting to the aggregate sum of about" $10,000. The interest received by Callahan in the Curry deed was in excess of the interest he was to receive according to the Kent-Callahan contract. The two instruments standing alone, fail to adequately prove that the title to the undivided 595/1500 royalty interest in question had its inception in the contract between Kent and Callahan.

*Hutchings v. Commissioner of Internal Revenue Service,* 111 F.2d 229 (5th Cir. 1940) cited by appellees is distinguishable. There the evidence clearly showed that the ripened title referred to the prior claim. Not so in the instant case. The Callahan-Kent contract and the Callahan-Curry deed refer to different undivided royalty interests. We think the court erred in finding that the disputed royalty interest was the separate property of Dan F. Callahan.

The trial court also found that any interest owned by Esther Dunn Callahan in the royalty in question, was devised to Katherine C. Jones by and through the will of Esther Dunn Callahan, and that appellees, Laurance David Jones and Esther Marilyn Robinson, were the sole beneficiaries under the will of Katherine C. Jones.

The will of Esther Dunn Callahan, who died June 1, 1973, in the state of Louisiana, the place of her domicile, has never been probated. Appellant made no objection when the will was introduced in evidence, but now contends that the court erred in holding that Esther Dunn Callahan did not die intestate as to the royalty interest in question.

The unprobated will of Esther Dunn Callahan is ineffective for the purpose of proving title. *Taylor v. Martin's Estate,* 117 Tex. 302, 3 S.W.2d 408 (1928); *Milner v. Sims,* 171 S.W. 784 (Tex.Civ.App.-Texarkana 1914, no writ); *Teague v. Wylie,* 110 S.W.2d 941 (Tex.Civ.App.-Fort Worth 1937, no writ). See also Texas Probate Code, Sections 94–104. In *Croom v. Little,* 42 S.W.2d 490 (Tex.Civ.App.-Beaumont 1931, no writ), an unprobated will was received in evidence without objection. In holding the will was insufficient to vest title, the court said:

". . . appellee insists that appellant cannot now say that it did not vest title in Versie Wyatt White. A sufficient answer to this contention is to say that the will, as offered and received by the trial court, was admissible in evidence, but, without the support of the judgment of the probate court, was wholly without effect upon the issue of title. As said by Judge Fly in *Skov v. Coffin* (Tex.Civ. App.-137 S.W. 450, 452) 'The burden was upon appellee, as the plaintiff in the case, to establish his title, and it was not incumbent upon appellants to make objections that would cause appellee to supply the missing link.' "

The court erred in holding that the unprobated will of Esther Dunn Callahan transferred her interest in the royalty to Katherine C. Jones.

The trial court judgment finds and holds that L. S. Kent and the unknown heirs of L. S. Kent have no right, title or interest in the undivided 595/1500 royalty interest in question. We affirm this finding and holding by the trial court.

We have held that the royalty interest was the community property of Dan F. Callahan and wife, Esther Dunn Callahan. We reverse the judgment of the trial court which held the royalty interest was the separate property of Dan F. Callahan. The appellees are the sole heirs at law of Dan F. Callahan, and are the owners of his one-half community interest in the royalty. We hereby render judgment that appellees own the following undivided interests:

(1) Daniel F. Callahan – ⅓ of ½ of 595/1500 royalty interest
(2) Eugene H. Callahan – ⅓ of ½ of 595/1500 royalty interest;
(3) Laurance David Jones – ⅙ of ½ of 595/1500 royalty interest;
(4) Esther Marilyn Robinson – ⅙ of ½ of 595/1500 royalty interest.

The evidence regarding the ownership of Esther Dunn Callahan's one-half community interest has not been fully developed, and in the interest of justice we sever the issue of the ownership of her one-half community interest and remand such issue for retrial.

Judgment of the trial court is affirmed in part, reversed and rendered in part, and remanded in part.